**Thomas GARCIA, Petitioner-Appellant,**

v.

**Hazel LEWIS, Superintendent, Hale Creek Correctional Facility, Respondent-Appellee.**

No. 98–3733.

United States Court of Appeals, Second Circuit.

Argued June 2, 1999.

Decided Aug. 12, 1999.

Winston McIntosh, New York City (Lynn W.L. Fahey, Appellate Advocates, New York City, of counsel), for Appellant.

Mark H. Levine, Assistant District Attorney, Queens County, Kew Gardens, NY (Richard A. Brown, District Attorney, Queens County, John M. Castellano, Robin A. Forshaw, Assistant District Attorneys, Queens County, Kew Gardens, NY, of counsel), for Appellee.

Before: MESKILL and WALKER, Circuit Judges, and TRAGER, District Judge.*

MESKILL, Circuit Judge:

Petitioner-appellant Thomas Garcia was convicted by a jury in New York State Supreme Court, Queens County, of one count of possession and sale of narcotics and one count of possession of marijuana. After exhausting his right to direct appeal in the state courts, Garcia petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. He claimed that his Sixth Amendment right to a public trial was violated because his mother's companion was excluded from the courtroom during the testimony of the undercover officer to whom Garcia allegedly sold drugs during a buy-and-bust operation. The state opposed the petition, arguing (1) that the state appellate court's finding that Garcia was procedurally barred from advancing his Sixth Amendment claim constituted an independent and adequate state ground of decision that precluded federal habeas review; (2) that even if federal review were proper, no constitutional violation occurred; and (3) that even if a violation occurred, the error was harmless. The district judge dismissed the petition on harmless error grounds alone, concluding that even if the claim were preserved, and a constitutional violation did occur, the petition nonetheless should be denied because the error was harmless.

We affirm the district court's judgment dismissing the petition, but, in so doing, we do not address the grounds relied on by the district court. Rather, we hold that Garcia is not entitled to federal habeas review because there exists an independent and adequate state ground for his conviction: the New York courts' conclusion that Garcia defaulted on his Sixth Amendment claim when his attorney failed to raise the issue at trial in accordance with New York's contemporaneous objection rules.

## BACKGROUND

### 1. *Factual and Trial History*

On November 3, 1993, Garcia was arrested after police conducted a "buy-and-bust" operation in which Garcia allegedly sold crack cocaine to an undercover police officer and a third person. Garcia was charged with two counts of sale and possession of a controlled substance, in violation of New York Penal Law § 220.39[1], and one count of marijuana possession, in violation of New York Penal Law § 221.05.

After jury selection at Garcia's trial, the state moved to close the courtroom during the testimony of the undercover officer (Undercover) to whom Garcia allegedly sold the drugs. Garcia's counsel objected, and the trial judge held a hearing, pursu-

* Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

ant to *People v. Hinton,* 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), to determine whether closure was permissible.

At the hearing, the Undercover testified that he was engaged in undercover narcotics activities in Queens County and had been doing such work for two years, averaging about ten undercover operations per week. He explained that he had numerous undercover operations pending within three to four miles of the courthouse, and that four or five of his cases were pending in the Queens County courts at that time. The Undercover's operations had produced four "lost subjects," *i.e.,* suspects with whom he had engaged in narcotics sales but who had evaded arrest, as well as others who had not yet been arrested. A number of the Undercover's open cases were from Astoria, Queens, where Garcia lived.

The Undercover testified that on at least fifteen occasions drug dealers who suspected him of being a police officer had threatened to kill him or injure his family, had thrown objects at him, or had tried to hit him with a car. The Undercover conceded, however, that he had not been threatened by Garcia, Garcia's family, or anyone connected with Garcia's case.

In light of his concerns, the Undercover explained his desire that the courtroom be closed during his testimony. Aware that his identity might become known if he was forced to testify in open court, he feared that his life would be jeopardized and that the effectiveness of his undercover operations would be compromised. The Undercover noted that he had never testified in an open courtroom and that in order to attend the *Hinton* hearing he had entered the courthouse through a side entrance and traveled to the courtroom in a back elevator with a court officer.

The trial judge granted the state's motion to close the courtroom, reasoning that requiring him to testify in open court would pose a "danger to him and to his operations." The court did, however, per-mit "any close relatives" of the defendant to be present. Garcia's counsel did not object to this ruling, responding only by saying, "Thank you."

When the prosecutor asked Garcia's counsel to identify in advance any family members who would be in the courtroom during the Undercover's testimony, Garcia's counsel indicated that although Garcia's mother, aunt or sister might attend, he did not "anticipate many people" attending the trial; to that effect he commented that "[n]o one is climbing to get in here."

The following day, after opening statements were complete and immediately before the Undercover was to testify, Garcia's counsel addressed the court and the following colloquy ensued:

Defense Counsel: Yes. Your Honor, yesterday, I believe during the closure hearing, you made a ruling that indicated that Mrs. Garcia, Tom's mother, would be allowed to stay, and I also believe that ruling would extend to her companion who has been a party to this action in terms of supporting Tom throughout the proceedings and pretrial proceedings as well. Would that ruling extend to him?

The Court: I said extended to relatives and the mother, but if he is not a relative, that doesn't extend to him. That was the ruling.

Defense Counsel: Okay.

The Court: So if he is technically just a friend, I'd have to excuse him along with the others.

Defense Counsel: Okay.

The Court: Are you ready to call your witness?

The State: Yes, I am, your Honor, and I'm going to ask now the Court to be closed.

The Court: I'll direct all those other people to leave the courtroom.

The Clerk: Okay. Folks, according to a Court ruling which was issued yester-

day, you must leave the courtroom. You will be instructed when you may return. So please leave. Thank you.

The Court: Counsel, there is no one else you expected?

Defense Counsel: No. You mean during the testimony of this witness?

The Court: Yes.

Defense Counsel: No. This is his mother's companion.

The Court: I made the ruling.

The clerk then sealed the courtroom, and the Undercover took the stand. He testified that he had purchased twenty dollars' worth of crack cocaine from Garcia, and had observed Garcia sell crack to a third person. The Undercover explained that he then identified Garcia to another officer, who arrested Garcia. The arresting officer and the Undercover's backup also testified on the prosecution's behalf. Garcia presented no witnesses.

The jury convicted Garcia on one count of criminal sale of a controlled substance, but acquitted him on the other. It also convicted him of marijuana possession, based on a small quantity of the drug that Garcia was found to possess at the time of his arrest. Garcia is currently serving a six-to-twelve year term of imprisonment.

### 2. State Post–Conviction Proceedings

Garcia appealed to the New York Supreme Court, Appellate Division, Second Department. He argued, among other things, that the exclusion of his mother's companion deprived him of his Sixth Amendment right to a public trial. The Appellate Division rejected this claim, holding that Garcia failed to preserve it for review. *See People v. Garcia,* 239 A.D.2d 599, 600, 658 N.Y.S.2d 365, 366 (2d Dep't 1997). The court also held, in the alterna-

tive, that the public trial claim failed on the merits because the exclusion satisfied the factors set out in *Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). *See Garcia,* 239 A.D.2d at 600, 658 N.Y.S.2d at 366. On July 14, 1997, leave to appeal to the New York Court of Appeals was denied.

### 3. Garcia's Petition for a Writ of Habeas Corpus

On April 2, 1998 Garcia filed the instant habeas petition, based solely on the exclusion of his mother's companion. In opposition, the state argued (1) that the Appellate Division's conclusion that the claim was not preserved for review constituted an independent and adequate state ground for the conviction that precluded federal habeas review; (2) that even if federal habeas review were permitted, no constitutional violation occurred; and (3) that even if the closure were constitutionally infirm, the error was harmless.

■ The district court decided the petition on harmless error grounds, after assuming without deciding that the closure issue was preserved for review and that the closure was unconstitutional.[1] Relying principally on our decisions in *Brown v. Kuhlmann,* 142 F.3d 529 (2d Cir.1998), and *Peterson v. Williams,* 85 F.3d 39 (2d Cir.1996), the court held that whatever error might have occurred was harmless, as any mistake that occurred "cause[d] no harm and . . . [was] too insignificant a violation of the public trial clause to warrant relief." After holding in the alternative that no *Waller* violation occurred, the court dismissed the petition but granted a certificate of appealability as to (1) whether the closure violated the Constitution and (2) if so, whether the error was harmless.[2]

1. The district court avoided the independent and adequate state ground determination, commenting at oral argument that "I only reach preservation issues if I feel that I have to grant the writ. But if I don't feel I have to

grant the writ, then I don't get involved in the procedural morass."

2. As explained below, we affirm on a ground as to which the certificate of appealability is silent: that an independent and adequate

## DISCUSSION

### 1. *The Independent and Adequate State Ground Doctrine*

■ The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, "[t]his rule applies whether the state law ground is substantive or procedural." *Id.* In the context of direct review of a state court judgment by the Supreme Court, the doctrine is jurisdictional: "Because [the Supreme] Court has no power to review a state law determination that is sufficient to support [a state court] judgment, resolution of any independent federal ground for [such a] decision could not affect the judgment and would therefore be advisory." *Id.*

■ The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus, although in that context the justification is different. In contrast to the Supreme Court on direct review, a federal habeas court "does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter,*" *see id.* at 730, 111 S.Ct. 2546, determining only whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a). In contrast to the Supreme Court where, "if resolution of a federal question cannot affect the judgment, there is nothing for the Court to do," *Coleman,* 501 U.S. at 730, 111 S.Ct. 2546, a habeas court's decision on a federal question would not be rendered advisory by the existence of an independent state ground of decision. Nonetheless, invoking principles of comity and federalism, rather than jurisdiction, federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review. *See id.; Washington v. James,* 996 F.2d 1442, 1447–48 (2d Cir.1993).

Applying the doctrine in the habeas context prevents a federal district court from being able to do in habeas cases what the Supreme Court could not do on direct review. In this way, the doctrine deprives "state prisoners whose custody was supported by independent and adequate state grounds [of] an end run around the limits of [the Supreme] Court's jurisdiction and a means to undermine the State's interest in enforcing its laws." *Coleman,* 501 U.S. at 730–31, 111 S.Ct. 2546. Thus, "[t]he independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Id.* at 732, 111 S.Ct. 2546.

■ An exception obtains only if the petitioner demonstrates both good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule. *See Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982);

state ground of decision precludes federal habeas review. We deem this method of affirmance appropriate despite the limited scope of the certificate of appealability granted to Garcia.

We see no reason why the certificate should limit what the state may argue on appeal, particularly because if the state were the appellant it would not have to secure, and thus could not be limited by, a certificate of appealability in the first instance. *See* Fed. R.App. P. 22(b)(3). In this circumstance, therefore, we adhere to the well settled rule that we may affirm an appealed decision "on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *Reid v. Senkowski,* 961 F.2d 374, 378 (2d Cir.1992) (citation and internal quotation marks omitted). There is ample support in the record for the independent and adequate state ground determination, as that issue was contested vigorously by both sides both below and during the course of this appeal.

*Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Here, the Appellate Division ruled that Garcia failed to preserve his public trial claim for appellate review because his counsel failed to lodge a proper objection at trial. The state contends that this procedural bar constitutes an independent and adequate state ground that precludes federal habeas review. There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an "independent" state ground, *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), even though the court spoke to the merits of Garcia's claim in an alternative holding, *see id.* at 264 n. 10, 109 S.Ct. 1038. Rather, the question in this case is whether the state ground relied upon is "adequate" to preclude federal habeas review.

2. *Standard for Determining the Adequacy of a State Ground Of Decision*

The Supreme Court repeatedly has held that " 'the question of when and how defaults in compliance with state procedural rules can preclude ... consideration of a federal question is itself a federal question.' " *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (quoting *Henry v. Mississippi*, 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965)).

"State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982). Accordingly, a procedural bar will be deemed "adequate" only if it is based on a rule that is "firmly established and regularly followed" by the state in question. *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review. Nonetheless, the princi-

ples of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion "lightly or without clear support in state law." *Meadows v. Holland*, 831 F.2d 493, 497 (4th Cir.1987) (en banc), *vacated on other grounds*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 575 (1989).

Our responsibility to ensure that the state rule is "adequate" obligates us to examine the basis for and application of state law. *See, e. g., Coleman v. O'Leary*, 845 F.2d 696, 701–03 (7th Cir. 1988); *Alburquerque v. Bara*, 628 F.2d 767, 772–74 (2d Cir.1980). In making that determination, however, some degree of deference is required. *See Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468, 484 n. 6, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (Brennan, *J.*, dissenting) (noting varied standards applied by Court in examining adequacy of state application of state law, and ultimately expressing "no doubt that the proper standard of review is a narrow one"). The Supreme Court has suggested that in determining the adequacy of a state procedural bar that precludes consideration of a federal claim, we should inquire whether there was a "fair or substantial basis" in state law for the default. *See Lawrence v. State Tax Comm'n*, 286 U.S. 276, 282, 52 S.Ct. 556, 76 L.Ed. 1102 (1932) ("Even though the claimed constitutional protection be denied on non-federal grounds, it is the province of this Court to inquire whether the decision of the state court rests upon a fair or substantial basis. If unsubstantial, constitutional obligations may not be thus avoided."); *see also Demorest v. City Bank Farmers Trust Co.*, 321 U.S. 36, 42, 64 S.Ct. 384, 88 L.Ed. 526 (1944) (noting that " 'if there is no evasion of the constitutional issue, and the non-federal ground of decision has fair support, this Court will not inquire whether the rule applied by the state court is right or wrong, or substitute its own view of what should be deemed the better rule, for that of the state court' ") (quoting *Broad River Power Co. v. South*

*Carolina,* 281 U.S. 537, 540, 50 S.Ct. 401, 74 L.Ed. 1023 (1930)). To this end, when " 'there can be no pretence that the [state] Court adopted its view in order to evade a constitutional issue, and the case has been decided upon grounds that have no relation to any federal question, this Court accepts the decision whether right or wrong.'" *Wolfe v. North Carolina,* 364 U.S. 177, 195, 80 S.Ct. 1482, 4 L.Ed.2d 1650 (1960) (quoting *Nickel v. Cole,* 256 U.S. 222, 225, 41 S.Ct. 467, 65 L.Ed. 900 (1921)) (alteration in *Wolfe* ).

In line with these cases, we have deferred to findings of procedural default as long as they are supported by a "fair or substantial basis" in state law. *See Arce v. Smith,* 889 F.2d 1271, 1273 (2d Cir.1989) (rejecting habeas petitioner's challenge to the adequacy of New York procedural default rule because we could not "say that there did not exist a 'fair or substantial basis' in state law for the state court's ruling") (quoting *Lawrence,* 286 U.S. at 282, 52 S.Ct. 556); *see also Silverstein v. Henderson,* 706 F.2d 361, 367 n. 11 (2d Cir.1983) (noting that "an unsupported or manipulative finding of procedural default would not constitute an adequate state ground barring federal habeas relief"). *Cf. Williams v. Lane,* 826 F.2d 654, 660 (7th Cir.1987) (deeming "inadequate" a procedural default premised on counsel's failure to make a contemporaneous objection where record clearly revealed that trial counsel had, in fact, made the necessary objection); *Francois v. Wainwright,* 741 F.2d 1275, 1281 (11th Cir.1984) (finding procedural ground not adequate where the existing rule was applied in a "surprisingly harsh or unexpected manner").

Accordingly we will deem a state court's finding of procedural default "adequate" if there is a "fair and substantial" basis in state law for the state court's determination.

3. *Was There a "Fair or Substantial Basis" in State Law for Application of the Procedural Bar in Garcia's Case?*

Here, the Appellate Division applied New York's codified contemporaneous objection rule, which preserves for review only those questions of law as to which "a protest ... was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. C.P.L. § 470.05. The New York Court of Appeals has explained that this rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon,* 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 737–38, 647 N.E.2d 1243, 1247–48 (1995). As another New York court has explained, "a question of law will be considered preserved for appellate review when it is interjected at the fact-finding level in such a manner and at such a time as to fairly apprise the court and the opposing party of the nature and scope of the matter contested." *People v. Jones,* 81 A.D.2d 22, 41–42, 440 N.Y.S.2d 248, 261 (2d Dep't 1981).

The Supreme Court has recognized that contemporaneous objection rules of this kind serve a legitimate state interest. *See Wainwright,* 433 U.S. at 88, 97 S.Ct. 2497 (noting the "many interests" that contemporaneous objection rules serve, such as "enabl[ing] the record to be made ... when the recollections of witnesses are freshest," enabling the judge "to make the factual determinations necessary for properly deciding the federal constitutional question," and "making a major contribution to finality in criminal litigation" by leading to avoidance of constitutional error); *Henry,* 379 U.S. at 448, 85 S.Ct. 564 (noting that contemporaneous objection rules force parties to alert judges to potential error at a time when they still may avoid reversible error).

We, too, have recognized the propriety of such rules, noting that "[i]f a state

appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with ... a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990). As a result, we have observed and deferred to New York's consistent application of its contemporaneous objection rules. *See Bossett v. Walker*, 41 F.3d 825, 829 n. 2 (2d Cir.1994) (respecting state court's application of New York C.P.L. § 470.05(2) as adequate bar to federal habeas review); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir.1991) (noting that failure to make objection at trial constitutes adequate procedural default under section 470.05(2)). Accordingly, New York's contemporaneous objection rule is not rendered "inadequate" on account of novelty or sporadic application, as sometimes is the case. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457–58, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (deeming novel state procedural bar inadequate to thwart federal review of constitutional issue where criminal defendant could not fairly be deemed to have notice of procedural bar); *Williams*, 826 F.2d at 659 (collecting cases in which state procedural rules were deemed inadequate because of their novelty or sporadic application).

In this case, however, Garcia does not object to New York's contemporaneous objection rule generally, but rather contends that the rule was misapplied in his case in particular. This, he contends, demonstrates that New York does not apply its rule "evenhandedly to all similar claims" within the meaning of *Hathorn*, 457 U.S. at 263, 102 S.Ct. 2421. In support of this argument, Garcia relies principally on the New York Court of Appeals' decision in *People v. Nieves*, 90 N.Y.2d 426, 660 N.Y.S.2d 858, 683 N.E.2d 764 (1997).

In *Nieves*, a buy-and-bust case like this one, the district attorney moved to close the courtroom during the undercover officer's testimony. *See id.* at 428, 660 N.Y.S.2d at 859, 683 N.E.2d at 765. When the defendant objected, the court held a *Hinton* hearing and heard argument about whether the defendant's wife and children should be permitted to remain in the courtroom. *See id.* at 428–29, 660 N.Y.S.2d at 859–60, 683 N.E.2d at 765–66. The state made specific arguments why the defendant's wife and children should be excluded, and defense counsel challenged these arguments. In ultimately deciding to close the courtroom, the court gave specific justifications as to why each individual should be barred. *Id.*, 660 N.Y.S.2d at 859–60, 683 N.E.2d at 765–66. As to the children, the court reasoned that their exclusion was justified "simply because they are children, and don't understand the concept of confidentiality." *Id.* at 429, 660 N.Y.S.2d at 860, 683 N.E.2d at 766.

The New York Court of Appeals found that the closure was unconstitutional, but more important here is its conclusion concerning preservation. In particular, the Appellate Division had deemed the issue of the children's exclusion unpreserved. *See id.* at 431 n. *, 660 N.Y.S.2d at 861 n. *, 683 N.E.2d at 767 n. *. In reversing this determination, the Court of Appeals noted that the issue had indeed been preserved because, "[a]fter [the] defendant objected to the People's application to close the courtroom ... the trial court expressly considered allowing the children to remain present and specifically rejected that possibility." *Id.*, 660 N.Y.S.2d at 861 n. *, 683 N.E.2d at 767 n. *. Because the trial court "was thus unquestionably apprised of defendant's wish to have his children attend the proceedings," the issue was preserved for appellate review under section 470.05. *Id.*, 660 N.Y.S.2d at 861 n. *, 683 N.E.2d at 767 n. *.

Viewed in a vacuum, the *Nieves* court's language might suggest that the court-

room closure issue was preserved in this case. The trial judge at Garcia's trial "expressly considered allowing" Garcia's mother's companion to remain present, and "specifically rejected that possibility." But the colloquy between the court and Garcia's counsel must be viewed in light of the full record and in light of New York courts' application of section 470.05. When viewed in this fashion, the analogy to *Nieves* loses force and the propriety of the Appellate Division's conclusion in this case becomes clear.

Most important, the facts in this case are critically dissimilar to those suggested in *Nieves*. The *Nieves* opinion suggests that the court and the parties discussed in specific detail the merits of excluding the individuals whose attendance was at issue. Indeed, the trial court gave a specific (although ultimately erroneous) justification for excluding the defendant's children. Here, in contrast, the issue was neither raised nor otherwise discussed in a meaningful way. Counsel's purported objection merely sought clarification of the court's previous ruling that the courtroom would be closed to all but the defendant's "close relatives."

In particular, as noted above, counsel stated

> I believe during the closure hearing, you made a ruling that indicated that Mrs. Garcia, Tom's mother, would be allowed to stay, and I also believe that ruling would extend to her companion who has been a party to this action in terms of supporting Tom throughout the proceedings and pretrial proceedings as well. Would that ruling extend to him?

This request—made a day after the *Hinton* hearing, after opening statements were complete and immediately before the Un-

dercover was to testify—failed to put the trial judge on notice as to what the defendant now claims he wanted: a ruling on the merits of the companion's eligibility to stay. Indeed, the balance of the colloquy indicates that the trial judge believed he was being asked only whether the companion fit within the scope of the court's previous ruling, a ruling that Garcia does not contest:

> The Court: I said extended to relatives and the mother, but if he is not a relative, that doesn't extend to him. That was the ruling.

> Defense Counsel: Okay.

> The Court: So if he is technically just a friend, I'd have to excuse him along with the others.

> Defense Counsel: Okay.

To be sure, the trial judge was aware that Garcia's counsel was asking permission for the companion to stay; but the trial judge reasonably did not understand counsel to be asking for an extension of the previous ruling, as Garcia now claims he was.

Garcia now argues that his mother's companion was entitled to stay *even though* he was "technically" just a friend, unless the state offered a specific reason why he personally should be excluded.[3] There is support for this position. *See In re Oliver*, 333 U.S. 257, 271–72 & n. 29, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ("[A]n accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged."); *Guzman v. Scully*, 80 F.3d 772, 775 (2d Cir.1996) (noting that in determining whether exclusion of particular individuals is warranted, trial judge must "give significant weight to" fact that individuals in question are defendant's

---

**3.** It is somewhat disingenuous for Garcia to argue, as he does in his appellate brief, that the exclusion was improper because the Undercover "expressed no trepidation about testifying before petitioner's mother's companion." Because defense counsel never raised the issue at the *Hinton* hearing, the district attorney never asked the Undercover about

the mother's companion. That Garcia would now contend that the state failed to meet its burden *vis-a-vis* the exclusion of the companion points up the very purpose of contemporaneous objection rules: to give both the court and the parties a fair opportunity to address issues before appeal.

friends). *Cf. Nieves,* 90 N.Y.2d at 431, 660 N.Y.S.2d at 861, 683 N.E.2d at 767 (placing burden on state to justify exclusion of specific family members that defendant wishes to attend trial); *People v. Gutierez,* 86 N.Y.2d 817, 633 N.Y.S.2d 470, 657 N.E.2d 491 (1995) (same).

But the trial court had no reason to believe that Garcia was advancing this argument. Garcia's counsel did not, as Garcia now contends, make an "application to 'extend' the court's [family-only] ruling" to include Garcia's mother's companion, based on the reasoning of *Oliver* and like cases. To the contrary, counsel merely inquired whether the court's prior ruling—one that Garcia did not contest—should be construed as extending to Garcia's mother's companion. In short, the trial judge was not made aware of what Garcia now claims he wanted: a separate ruling on the merits of whether Garcia was entitled under the Constitution to have his mother's companion present during the Undercover's testimony. Because the trial judge was never given a meaningful opportunity to rule on the very issue Garcia attempted to raise on appeal, Garcia's counsel failed to comply with Criminal Procedure Law section 470.05.[4]

Moreover, the Appellate Division's determination that Garcia failed to preserve his claim has a "fair and substantial" basis in state law. As noted above, the New York Court of Appeals has held that the contemporaneous objection rules embodied in section 470.05 of the Criminal Procedure Law "require, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Luperon,* 85 N.Y.2d at 78, 623 N.Y.S.2d at 738–39, 647 N.E.2d at 1247–48. Along the same lines, "a ques-

tion of law will be considered preserved for appellate review when it is interjected at the fact-finding level *in such a manner* and at such a time as to fairly apprise the court and the opposing party of the nature and scope of the matter contested." *Jones,* 81 A.D.2d at 41–42, 440 N.Y.S.2d at 261 (emphasis added).

While in this case an issue may have been raised "at a time" when the trial judge could have remedied a potential problem, the legal issue Garcia attempted to raise on appeal was not brought to the trial court's attention "in a way" or "in such a manner" as to give the trial judge an opportunity to remedy the problem and avert reversible error. Counsel at most asked the judge to clarify the previous day's closure order, and the trial judge reasonably understood counsel's request as just that; it runs contrary to the legitimate purpose of section 470.05 to characterize as "preserved" an issue on which the trial judge never had the opportunity to rule. New York courts agree with this proposition. *See, e. g., People v. Witt,* 685 N.Y.S.2d 657, 658 (1st Dep't 1999) (deeming objection to scope of closure unpreserved because "[d]efendant entered no specific objection to the court's *Hinton* ruling and thus did not preserve his current claims of error"); *People v. Ford,* 235 A.D.2d 285, 654 N.Y.S.2d 2 (1st Dep't 1997) ("Although the court ruled that defendant's relatives would be excluded from the courtroom, defendant's present claim that his brother and cousin were improperly excluded is unpreserved and unreviewable, since defendant merely suggested that these relatives might wish to attend, and there is no indication that any relatives ever came to the courtroom."); *People v. Richards,* 235 A.D.2d 557, 653 N.Y.S.2d 865 (2d Dep't 1997) ("The defendant's contention that the trial court did not consider reasonable alternatives to closure of the courtroom during

---

**4.** In this regard, attorney error has precluded Garcia from raising his federal constitutional claim. Garcia has not argued that counsel's performance was constitutionally ineffective

so as to establish "cause" for the default under the rule announced in *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

the testimony of an undercover officer was not preserved for appellate review since the defendant never raised that contention at trial."); *People v. Vasquez,* 245 A.D.2d 178, 666 N.Y.S.2d 181 (1st Dep't 1997) ("Defendant's current challenge to the closure of the courtroom during the undercover officer's testimony is unpreserved, since he never objected to closure and expressly declined to be heard at the end of the hearing."); *People v. Stovens,* 237 A.D.2d 154, 655 N.Y.S.2d 361 (1st Dep't 1997) ("Defendant's contention that the court erred in closing the courtroom during the testimony of the undercover officer is unpreserved since he failed to raise any of the arguments he now raises on appeal."); *People v. Lugo,* 233 A.D.2d 197, 198, 650 N.Y.S.2d 102, 103 (1st Dep't 1996) ("Defendant's contention that the courtroom was improperly closed during the testimony of an undercover officer is unpreserved because, at the *Hinton* hearing, defendant raised none of the arguments he now raises on appeal."); *People v. Ocasio,* 216 A.D.2d 157, 157, 628 N.Y.S.2d 651, 652 (1st Dep't 1995) (stating that to preserve a question as to whether a specific individual may stay in the courtroom the issue should be raised at the *Hinton* hearing).

Simply put, Garcia's trial counsel failed to bring to the trial court's attention the claim that Garcia later attempted to advance on appeal. This ran afoul of New York's legitimate requirement that objections be raised "in a way that [gives] the [trial court] the opportunity to remedy the problem and thereby avert reversible error." *Luperon,* 85 N.Y.2d at 78, 623 N.Y.S.2d at 738–39, 647 N.E.2d at 1246–47.

▮ In our view, the Appellate Division reached a reasonable conclusion when it deemed Garcia's claim unpreserved. A contrary holding would only encourage the kind of "sandbagging" that procedural forfeiture rules reasonably discourage, *see Wainwright,* 433 U.S. at 89, 97 S.Ct. 2497, and that "undermines the [justification] for the writ." *Brown,* 142 F.3d at 543; *see*

*also Reed v. Farley,* 512 U.S. 339, 349, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). In any event, it is not for us to second-guess a state court's determination as to which there is a fair and substantial basis in state law. Where, as here, "there is no evasion of the constitutional issue, and the nonfederal ground of decision has fair support," *Demorest,* 321 U.S. at 42, 64 S.Ct. 384, it would be improper for us to "inquire whether the rule applied by the state court is right or wrong, or substitute [our] view of what should be deemed the better rule, for that of the state court," *id.* (citation and internal quotation marks omitted). Rather, as we can discern " 'no pretence that the [state] Court adopted its view in order to evade a constitutional issue, and the case has been decided upon grounds that have no relation to any federal question, [we will] accept[ ] the [state court] decision whether right or wrong.' " *Wolfe,* 364 U.S. at 195, 80 S.Ct. 1482 (quoting *Nickel,* 256 U.S. at 225, 41 S.Ct. 467) (first alteration in *Wolfe* ).

## CONCLUSION

Because we conclude that the existence of an independent and adequate state ground of decision precludes federal habeas review in this case, we affirm the district court's judgment dismissing the petition. We do not address whether Garcia's Sixth Amendment rights were violated or, if they were, whether the error that occurred was harmless. We affirm exclusively on the basis that there was an independent and adequate state ground for the conviction and that, as a result, principles of comity and federalism dictate that our courts decline to hear the petition.

The judgment of the district court is affirmed.