15-1944-pr
Pierotti v. Walsh

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Argued: April 7, 2016                                    Decided: August 24, 2016)

Docket No. 15-1944-pr

_____

JOHN PIEROTTI,

*Petitioner-Appellant*,

v.

JAMES WALSH, Superintendent at
Sullivan Correctional Facility,

*Respondent-Appellee*.

_____

Before: POOLER, LIVINGSTON, and LOHIER, *Circuit Judges*.

Appeal from a May 18, 2015 judgment of the United States District Court

for the Eastern District of New York (Hurley, *J*.) adopting the report and

recommendation of a magistrate judge (Brown, *J*.) denying John Pierotti's

petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court held that it was precluded from reviewing the merits of Pierotti's ineffective assistance of counsel claim because the state court had rejected that claim on a procedural ground that was "independent" of federal law and "adequate" to preclude federal habeas review. We hold that this case falls within the limited category of exceptional cases where the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). Accordingly, the district court was not precluded from reviewing the merits of Pierotti's ineffective assistance of counsel claim. We VACATE the judgment of the district court and REMAND for further proceedings.

Vacated and remanded.

_____

DANIEL D. ADAMS, Latham & Watkins LLP, New York, NY, *for Petitioner-Appellant*.

SARAH S. RABINOWITZ (Tammy J. Smiley, Judith R. Sternberg, *on the brief*), *for* Madeline Singas, District Attorney for Nassau County, Mineola, NY.

POOLER, *Circuit Judge*:

John Pierotti claims that he was sentenced to life in prison after a trial that he could not hear. Pierotti suffers from a hearing impairment that requires him to use hearing aids, but those aids were broken during Pierotti's trial for murder. He says that although he told his trial counsel that he could not hear during his trial, counsel never requested an accommodation for Pierotti's disability.

Pierotti now contends that he received ineffective assistance of counsel. He presented this argument to a state court on collateral review, but the court declined to address its merits, concluding that the claim was procedurally barred because Pierotti could have brought it on direct appeal. The district court held that this decision rested on a state procedural ground that was "independent" of federal law and "adequate" to preclude federal habeas review.

We disagree. We hold that this case falls within the limited category of exceptional cases where the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). Accordingly, the district court was not precluded from reviewing the merits of Pierotti's ineffective assistance of counsel

3

claim. We vacate the judgment of the district court and remand for the court to consider the merits of Pierotti's claim.

**BACKGROUND**

In 1998, John Pierotti shot and killed two men outside of a bar. He was arrested and charged principally with two counts of first-degree murder. Pierotti admitted to shooting the men, but, at trial, argued that he acted in self-defense. The jury disagreed and convicted Pierotti of murder. The judge sentenced him to life imprisonment without the possibility of parole.

Pierotti has had a hearing impairment since he was a child. An audiologist has determined that Pierotti has a "bilateral sensorineural hearing loss," which is a "hearing impairment due to an abnormality of the functioning of the auditory nerve located in the inner ear." App'x at 1147. Pierotti accordingly wears hearing aids in both of his ears.

Shortly before a pretrial hearing, the only hearing aid that Pierotti had with him in jail broke. At the beginning of the hearing, the clerk asked Pierotti if he was ready to proceed. Pierotti responded, "No." App'x at 141. Pierotti's lawyer at the hearing told the court that Pierotti's hearing aid had been broken in

4

jail and that Pierotti was having "extreme difficulty hearing," so that, if the court was going to proceed, it would have to "make some accommodations for his hearing loss." App'x at 141. Counsel requested a continuance, but the court denied the request. The following colloquy then ensued:

> THE COURT: For the record, this is a very small courtroom here in the west wing. It was originally designed for misdemeanor trials. . . . [P]lease keep your voice up.
>
> Mr. Pierotti, if you have any problem hearing anything, you let me know. . . .
>
> THE CLERK: Mr. Pierotti, I would just like to remind you, you are still under oath. You are still under oath.
>
> THE WITNESS: Are you talking to me?
>
> THE CLERK: Yes.
>
> THE COURT: You are still under oath, Mr. Pierotti.
>
> THE DEFENDANT: Yes.
>
> [DEFENSE COUNSEL]: May I ask you to give one more warning to Mr. Pierotti that if he doesn't completely hear the question, don't assume what it is but ask to have it read back to him so--
>
> THE DEFENDANT: I can't hear you from here.
>
> THE COURT: All right, we are going to -- Mr. Walsh come up.
>
> I am going to tell you, Mr. Pierotti, you heard me very clearly when I started as to whether -- you heard the clerk from a lot further away as to whether or not the defendant was ready to proceed. You could hear that, and you answered that question.
>
> Please, don't play any games with me. I am a finder of fact here. I am telling you what I observed up to this point. Now let's stop.

5

App'x at 147-48. Pierotti then testified and responded to questions. At times he asked the prosecutor to repeat certain questions.

Pierotti was represented by new counsel at trial. The trial record does not indicate whether counsel was aware that Pierotti had a hearing impairment. According to Pierotti, his hearing aid was still broken during his trial. The trial was conducted in a different, larger courtroom than the pretrial hearing. Pierotti claims that he "was only able to understand limited parts of [his] trial," that it was "most difficult for [him] to understand when more than one person was speaking at a time or when the person speaking was at a distance or facing away from [him]," and that he had a "very difficult time understanding witnesses who were testifying from the witness stand." App'x at 1119. He says that he told his trial counsel many times that he was unable to hear what witnesses were saying and that counsel often responded by telling Pierotti to be quiet. He says that trial counsel refused to explain to him what witnesses were saying during the trial, that counsel would sometimes explain the proceedings outside of court but told him that he "did not need to hear all of the proceedings," and that counsel "did

not once ask the judge to make any accommodations for [his] hearing impairment." App'x at 1120.

Following his conviction, Pierotti filed a notice of appeal. He was again represented by new counsel on appeal. Pierotti's appellate counsel raised a number of issues, but he did not argue that Pierotti's trial counsel was ineffective in failing to secure an accommodation for Pierotti's hearing impairment. The Appellate Division affirmed the conviction on direct appeal, and a judge of the New York Court of Appeals denied leave to appeal.

Pierotti then filed a timely petition for a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254. In his federal habeas suit, Pierotti asserted that he was denied his constitutional right to effective assistance of counsel because of his trial counsel's failure to secure accommodations for his hearing impairment. He requested that the district court stay his federal habeas proceedings so that he could exhaust this claim in state-court collateral proceedings. The court granted the request.

Pierotti then filed a motion to vacate his conviction in state court pursuant to N.Y. Criminal Procedure Law § 440.10.[1] He argued principally that his trial counsel was ineffective in failing to secure an accommodation for his hearing impairment. In support of his petition, Pierotti submitted twelve exhibits that were not part of the trial record. Included in these exhibits was an affidavit from trial counsel in which counsel acknowledged—for the first time on the record— that Pierotti told him that he normally wore hearing aids to help with his hearing ability, but that he did not have any working aids during the trial. Counsel further acknowledged the following:

> During the trial, Mr. Pierotti indicated to me on various occasions that he could not hear what was happening. When this happened, I either whispered to him, wrote him notes to explain what was happening, or indicated to him to be quiet so that I could listen to what was happening in court.
>
> During breaks, I was able to discuss specific witness testimony with Mr. Pierotti, and he seemed aware of the gist of the testimony and the proceedings. However, I never directly asked Mr. Pierotti during these breaks how well he was able to follow the proceedings.

App'x at 1141. None of this information was part of the trial record.

---

[1] Section 440.10(1)(h) provides, "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that . . . [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States."

Pierotti's exhibits also included four hearing tests performed by the department of corrections documenting the severity of his hearing disability, an affidavit from Pierotti attesting to his inability to hear witnesses and counsel at trial and that he advised trial counsel of that fact, affidavits from four family members, three of whom witnessed Pierotti visibly struggling to hear during trial and who told trial counsel that Pierotti could not hear the proceedings, and an affidavit from an expert audiologist who analyzed the courtroom in which Pierotti was tried and concluded that Pierotti's disability would have made it difficult for him to understand his trial proceedings without accommodations. Again, none of this information was part of the trial record.

The state court denied Pierotti's Section 440.10 motion on procedural grounds without a hearing. The court held that because "the issue of the defendant's hearing impairment was available pre appeal, the issue could have been raised upon appeal and [Pierotti's] failure to do so preclude[s]

consideration of his claim now" pursuant to Section 440.10(2)(c). App'x at 1238.[2]

A justice of the Appellate Division denied leave to appeal.

With his state remedies exhausted, Pierotti returned to federal court to assert his ineffective assistance of trial counsel claim. A magistrate judge reviewed the record that had been before the state court, including the twelve exhibits Pierotti submitted, and recommended denying Pierotti's petition. Over Pierotti's objection, the district court adopted the magistrate judge's recommendation, holding that it could not review the merits of Pierotti's claim because the state court had rejected the claim on state procedural grounds, which were, in the district court's view, "adequate" to preclude federal habeas review. The court granted a certificate of appealability on the issue, however. The court also stated that, were it to address Pierotti's claim on the merits, Pierotti "would,

---

[2] Section 440.10(2)(c) provides,

> [T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to . . . raise such ground or issue upon an appeal actually perfected by him . . . .

at the very least, be entitled to a hearing on his ineffective assistance of trial counsel claims." *Pierotti v. Walsh*, No. 03-3958 (DRH), 2015 WL 2337316, at *15 (E.D.N.Y. May 13, 2015). The court was "particularly disturbed by trial counsel's apparent failure to request any accommodation for [Pierotti] despite his admission that during the trial, Mr. Pierotti indicated to him on various occasions that he could not hear what was happening and that he never directly asked Pierotti how well he was able to follow proceedings." *Id.* (alterations and internal quotation marks omitted). The court stated that, in its view, "[t]o the extent trial counsel was aware of Pierotti's hearing impairment and failed to request any accommodation, counsel failed to assure Pierotti received his constitutional rights." *Id.*

Pierotti now appeals, arguing that his failure to raise his ineffective assistance of trial counsel claim on direct appeal was not an "adequate" ground to bar federal habeas review.

## DISCUSSION

We review the denial of a petition for habeas corpus de novo. *Clark v. Perez*, 510 F.3d 382, 389 (2d Cir. 2008).

11

Under the independent and adequate state ground doctrine, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The doctrine first arose in the context of direct appeals to the Supreme Court. *See Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *see also, e.g., Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Michigan v. Long*, 463 U.S. 1032, 1038-42 (1983). In that context, the doctrine is jurisdictional: "Because [the Supreme] Court has no power to review a state law determination that is sufficient to support [a state court] judgment, resolution of any independent federal ground for [such a] decision could not affect the judgment and would therefore be advisory." *Coleman*, 501 U.S. at 729; *see also Garcia*, 188 F.3d at 76.

The independent and adequate state ground doctrine also applies to federal habeas review, albeit for different reasons. *Coleman*, 501 U.S. at 729-30. In the habeas context, the existence of an independent and adequate state ground of decision is not a jurisdictional bar, as the federal court is not technically "reviewing" a state-court judgment, so there is no concern about the court

12

rendering an advisory opinion. Rather, the federal court is answering a different question: whether a person is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Garcia*, 188 F.3d at 76. Still, the Supreme Court has held that, under principles of comity and federalism, a federal habeas court faced with an independent and adequate state ground of decision must defer in the same manner as the Supreme Court would in a case on direct review. *Coleman*, 501 U.S. at 730-31; *Garcia*, 188 F.3d at 76.

In this case, the district court held that it could not reach the merits of Pierotti's ineffective assistance of trial counsel claim because the state court's rejection of that claim rested on an independent and adequate state ground, namely, that the claim was procedurally barred under Section 440.10(2)(c) because Pierotti could have brought the claim on direct appeal but failed to do so. On appeal, Pierotti does not dispute that this state procedural bar was "independent" of federal law. The only question is whether it was "adequate" to preclude federal habeas review. This is a federal question. *Garcia*, 188 F.3d at 77.

A habeas petitioner may bring two kinds of challenges to the adequacy of a state procedural bar. First, the petitioner may challenge a procedural bar on the

ground that it is not "'firmly established and regularly followed' by the state in question." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Second, even if a procedural bar is "firmly established and regularly followed," a petitioner may still challenge the adequacy of the bar in exceptional cases where the state court's application of the rule was "exorbitant," "render[ing] the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

Here, there is no dispute that Section 440.10 is "firmly established and regularly followed." Rather, Pierotti's challenge concerns the state court's application of Section 440.10(2)(c) to the facts of his case. In *Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003), we identified three considerations that are relevant to assessing a state court's application of a generally sound rule:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision;

> (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and

> (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

14

*Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 382). These three considerations are "guideposts" for courts, not exclusive "factors." *Whitley v. Ercole*, 642 F.3d 278, 287-88 (2d Cir. 2011).

Where, as here, we are "assessing the contours of a state court's denial of collateral review because of a petitioner's failure to raise an issue on direct appeal," we "focus on the second of the *Cotto* guideposts." *Fulton v. Graham*, 802 F.3d 257, 262-63 (2d Cir. 2015) . "The second *Cotto* [guidepost] considers whether state case law indicates that compliance with a procedural rule *was required* under the specific circumstances of the case." *Id.* at 262-63 (quoting *Clark*, 510 F.3d at 392).

Here, the state court based its decision on the procedural rule articulated in N.Y. Criminal Procedure Law Section 440.10(2)(c). Recently, in *Fulton*, we looked to the second *Cotto* guidepost to conclude that the state court's application of Section 440.10(2)(c) to bar an ineffective assistance of counsel claim was so "exorbitant" that it rendered Section 440.10(2)(c) inadequate to preclude federal habeas review of the claim. *Id.* at 262-64. In *Fulton*, petitioner was offered a plea that would have made him eligible for a 10-year sentence, but he turned it

15

down and was eventually sentenced to 40 years' imprisonment. *Id.* at 266. On collateral review in state court, he alleged that his trial lawyer gave him "no guidance" during plea negotiations and "failed to discuss the pros and cons of accepting the plea offer." *Id.* The state court denied petitioner's motion to vacate his conviction under Section 440.10 on the ground that petitioner could have raised the ineffective assistance argument on direct appeal, citing Section 440.10(2)(c). *Id.* at 261. The district court denied the petition for a writ of habeas corpus, concluding that the state court had relied on an independent and adequate state ground in rejecting the ineffective assistance of counsel claim. *Id.*

We vacated and remanded, holding that Section 440.10(2)(c), as applied by the state court to petitioner's case, was inadequate to preclude federal habeas review. *Id.* at 264. In considering the state court's application of Section 440.10(2)(c), we noted that "the weight of state case law suggest[ed] that New York Courts do not ordinarily apply [Section] 440.10(2)(c) to bar claims of ineffective assistance based on out-of-court conversations between a defendant and his counsel." *Id.* at 263. Rather, our review of state court authority "suggest[ed] the opposite: state courts ordinarily demand that such ineffective

16

assistance claims be brought in collateral proceedings, rather than on direct appeal." *Id.* We noted that the trial record "d[id] not clearly reflect the adequacy of counsel's advice" and concluded that, under the circumstances, "the state court's reliance on [Section] 440.10(2)(c) to bar Fulton's claim represent[ed] an 'exorbitant application' of the state rule." *Id.* at 264 (quoting *Lee*, 534 U.S. at 376).

The same is true here. New York case law indicates that Pierotti did not have to raise his ineffective assistance of counsel claim on direct appeal. To the contrary, while 440.10(2)(c) is designed "to prevent Section 440.10 from being employed as a substitute for direct appeal," *Fulton*, 802 F.3d at 263 (alterations and internal quotation marks omitted), New York courts uniformly hold that where, as here, an ineffective assistance of counsel claim turns on facts that are outside of the trial-court record, the claim *must* be brought in collateral proceedings, not on direct appeal.

The New York Court of Appeals has held,

> Generally, the ineffectiveness of counsel is not demonstrable on the main record . . . . Consequently, in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under [Section] 440.10.

17

*People v. Brown*, 45 N.Y.2d 852, 853-54 (1978); *see also People v. Peque*, 22 N.Y.3d 168, 202 (2013) ("Where a defendant's complaint about counsel is predicated on factors such as counsel's advice or preparation that do not appear on the face of the record, the defendant must raise his or her claim via a [Section] 440.10 motion."); *People v. Harris*, 491 N.Y.S.2d 678, 687 (2d Dep't 1985) ("The Court of Appeals has time and time again advised that ineffective assistance of counsel is generally not demonstrable on the main record.").

Further, under New York law, where "some of the defendant's allegations of ineffectiveness involve matters appearing on the record, while others involve matters that are outside the record, the defendant has presented a 'mixed claim' of ineffective assistance." *People v. Maxwell*, 933 N.Y.S.2d 386, 388 (2d Dep't 2011) (alteration omitted) (quoting *People v. Evans*, 16 N.Y.3d 571, 575 n.2 (2011)). Where "a defendant presents a mixed claim of ineffective assistance . . . [,] such a mixed claim, presented in a [Section] 440.10 motion, is not procedurally barred, and the [Section] 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety." *Id.*; *see also People v. Love*, 57 N.Y.2d 998, 1000 (1982); *People v. Stokes*, 3 N.Y.S.3d 618, 619 (2d Dep't 2015); *People v. Barbuto*,

18

6 N.Y.S.3d 369, 373 (4th Dep't 2015); *People v. Freeman*, 940 N.Y.S.2d 314, 315 (2d Dep't 2012).

Pierotti presented such a "mixed claim" of ineffective assistance in his Section 440.10 motion. His claim depended on some facts appearing on the trial record, such as his trial counsel's failure to secure an accommodation for Pierotti's hearing impairment, but his claim ultimately turns on facts appearing outside the record, such as his trial counsel's alleged awareness of Pierotti's hearing impairment. Although it is apparent from the transcript of the pretrial hearing that Pierotti's counsel at that hearing was aware of Pierotti's hearing impairment, nothing in the trial record indicates that Pierotti's new counsel at trial was aware of this fact. Nor does the trial record indicate that Pierotti was unable to hear critical portions of his trial, as he now claims. Without this information, the Appellate Division could not have adjudicated Pierotti's ineffective assistance of counsel claim on direct appeal.

Indeed, the district court agreed with this analysis. It concluded that Pierotti

> presented a mixed ineffective assistance claim in his [Section] 440.10
> motion because his claim rested partly on his trial counsel's failure

19

to object to the lack of accommodation at trial for his hearing impairment which does appear on the record—and partly on the affidavits attesting to petitioner's inability to hear during the trial and his trial counsel's knowledge of that fact, and the affidavit of the expert explaining the nature of [Pierotti's] hearing impairment and why [Pierotti] was able to hear adequately during, for example, his direct examination at the pre-trial hearing and during the charge conference but not during the testimony of witnesses.

*Pierotti*, 2015 WL 2337316, at *13. Thus, the court concluded that "compliance with . . . [Section] 440.10(2)(c) was not demanded in the specific circumstances presented because sufficient facts did not appear on the record to permit adequate review upon direct appeal." *Id.* (citations, alteration, and internal quotation marks omitted).

The district court also, however, analyzed the first and third *Cotto* guideposts, found that they favored the state, and then concluded that, based on its consideration of all three guideposts, the state court's application of Section 440.10(2)(c) was adequate to bar federal habeas review. *Pierotti*, 2015 WL 2337316, at *12-14. This was error. The *Cotto* guideposts are not all applicable in every case because we derived them from a fact-specific analysis in *Lee*. *See Cotto*, 331 F.3d at 240. Here, as was the case in *Fulton* and *Clark*, only the second *Cotto* guidepost is instructive because the first and third pertain specifically to procedural violations

20

that occurred before a trial court. The district court thus improperly "force[d] square pegs into round holes" in considering those guideposts. *Clark*, 510 F.3d at 391.

Under *Cotto*'s second guidepost, the state's contention that Pierotti's ineffective assistance of counsel claim was "sufficiently reviewable from the record," Appellee's Br. at 35, and that Section 440.10(2)(c)'s procedural bar was properly applied, is mistaken. We can find no case law that supports the state's position, particularly given the essential facts of Pierotti's claim (namely, Pierotti's alleged hearing difficulties at trial, the extent of those difficulties, and trial counsel's awareness of them) are dependent on evidence outside the trial record. The cases cited by the state instead support only the unremarkable proposition that where there are record facts that dispose of an ineffective assistance of counsel claim, the state appellate court will address that claim on direct review. For example, in *People v. Koons*, 623 N.Y.S.2d 398 (3d Dep't 1995), the Appellate Division was able to reject defendant's claim "that his counsel acted ineffectively when he failed to raise the issue of defendant's [hearing] impairment prior to the hearing" because the record indicated that defendant

had "admitted that he was able to hear all of the testimony of the prosecution witnesses." *Id.* at 399; *see also, e.g.*, *People v. Feliz*, 858 N.Y.S.2d 472, 473-74 (3d Dep't 2008) (rejecting ineffective-assistance claim premised on counsel's "alleged failure to secure an interpreter for defendant's various appearances," which depended on defendant's "professed difficulties understanding the English language," because the claim was "belied by a review of the transcript at issue—most notably, defendant's plea allocution"). Here, by contrast, Pierotti has never admitted that he could hear witness testimony. To the contrary, he now claims that he could *not* hear the witnesses who were testifying against him.

In the absence of any New York authority indicating that claims like Pierotti's must be raised on direct appeal under Section 440.10(2)(c), "we can only conclude that the state court's reliance on [Section] 440.10(2)(c) to bar [Pierotti's] claim represents an 'exorbitant application' of the state rule." *Fulton*, 802 F.3d at 264 (quoting *Lee*, 534 U.S. at 376). Thus, Section 440.10(2)(c) was "inadequate" to foreclose review of Pierotti's ineffective assistance of trial counsel claim. On remand, the district court should decide the merits of the claim.

22

## CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.