■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD GLOVER, Also Known as JOHN SMALL, Appellant. [683 NYS2d 4] —Judgment, Supreme Court, New York County (Jerome Hornblass, J.), rendered February 6, 1996, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 6 to 12 years, affirmed.

Since the defendant failed to specifically identify his brother and sister in seeking to limit the court's order closing the courtroom during the testimony of an undercover officer, the defendant's present *Hinton* claim is unpreserved.

Initially, the undercover's *Hinton* hearing testimony provided

ample grounds for the court to determine that closure of the courtroom to the general public during the officer's testimony was necessary for his safety and effectiveness (*see, People v Ramos*, 90 NY2d 490, 499, *cert denied sub nom. Ayala v New York*, 522 US 1002). He stated that for two years he had been working as an undercover officer in the Midtown North and Midtown South precincts, that he had worked in the specific area of defendant's sale in the week prior to trial, that he had two open cases stemming from operations in the area for which arrests had not yet been made, that he had received threats in the past from drug sellers in the area of defendant's arrest, and that he had used the Judges' entrance to the courthouse the day of the hearing and dressed in plainclothes so that he could not be identified.

Nevertheless, defendant's counsel asserted that the closure order should be limited in that defendant's "family at the very least" should be allowed to attend the trial.

The court, noting that neither defendant's mother nor any other spectator had yet attended the trial, ruled that it would permit defendant's mother to attend the trial unless the People could prove that she posed a threat to the undercover. In response, defense counsel asked, "You are saying just the mother, judge, not any other family members?" The court responded affirmatively and defense counsel said nothing further on the subject.

It is defendant's position that he was denied his right to a public trial as a result of the application of the closure order to his family during the undercover's testimony. Specifically, he contends that the People failed to establish that his brother or sister, in particular, would be a threat to the undercover's safety.

It is noteworthy that no family member had attended the trial up to that point, and therefore the trial court had no independent basis of knowledge as to the identity of any interested family members. Nor is there any indication in the record that defendant's brother and sister actually wanted or tried to attend the trial (*see, People v Vargas*, 236 AD2d 258, *lv denied* 90 NY2d 865). The only specific reference to particular family members in the entire interchange was defense counsel's tentative comment that "in the past, defendant's mother and *I believe*, brother and sister" had attended some of his court appearances (emphasis supplied). Under such circumstances, the request that defendant's "family" be allowed to attend the trial constituted at best a vague suggestion that some might wish to attend. Such a broad and vague request does not sufficiently

raise the issue in order to preserve it for our review (*see, People v Ford*, 235 AD2d 285, *lv denied* 89 NY2d 1035). Moreover, the record reflects counsel's acquiescence in the ruling, additionally undermining defendant's claim of preservation.

Upon the People's demonstration that closure of the courtroom was necessary, it was defendant's responsibility to specifically suggest reasonable alternatives to closure (*see, People v Ramos, supra*, at 504; *People v Ford*, 235 AD2d 285, *supra*). If the People are to be required to prove that a threat is posed by the individuals whose admission to the courtroom defendant seeks (*see, People v Kin Kan*, 78 NY2d 54, 58), the defendant should in turn be required to specify exactly which individuals he seeks to admit, by name and relationship to him. Defendant here never specifically stated that he wished his brother and sister to be excluded from the closure order and permitted to attend the trial.

Because defendant's proposed alternative to complete closure of the courtroom failed to specifically identify defendant's brother and sister, the present *Hinton* claim is unpreserved and unreviewable. Additionally, we perceive no considerations warranting review in the interest of justice. Concur—Tom, Andrias and Saxe, JJ.

Rosenberger, J. P., and Wallach, J., dissent in a memorandum by Wallach, J., as follows: The undercover officer testified at the *Hinton* hearing that the effectiveness of his work and his personal safety in ongoing investigations in midtown Manhattan would be jeopardized should his identity be revealed to the public. Defendant suggested the alternative that his family be permitted to attend during that testimony: his mother was in her sixties, and his brother and sister had occasionally attended court sessions on his behalf in the past.

The People countered by urging that the closure apply equally to defendant's family, inasmuch as they might inadvertently compromise the officer's identity in the neighborhood of his undercover operations, even though the family lived in Brooklyn. The trial court ordered the courtroom closed to all but defendant's mother during the officer's testimony, to the exclusion of other members of the family.

This record does not permit the inference, drawn by the majority, that the request with regard to defendant's brother and sister was too "broad and vague" to preserve it for appellate review. In making the application, counsel specifically requested that defendant's mother "and other family members" be allowed into the courtroom, as the prosecutor conceded they had on other occasions when the undercover officer was not

present. Nor is it clear that counsel "acquiesce[d]" in the court's restrictive ruling. Having already requested the presence of the "family," counsel's reaction ("You are saying just the mother, judge, not any other family members?") can just as easily be read as an astonished protest rather than an unequivocal acquiescence.

Our Court of Appeals has ruled that the burden rests on the party opposing closure to alert the court to alternative procedures that might equalize the conflicting interests of a public trial and the protection of an undercover witness' identity (*People v Ramos*, 90 NY2d 490, 504, *cert denied sub nom. Ayala v New York*, 522 US 1002). That burden was met with the request that the family be permitted to attend. Once the suggestion was made with regard to defendant's siblings, the trial court should have made an effort to determine their ages, or explore whether their exclusion might preclude defendant's mother from attending alone. (As it turned out, no members of the family attended any of these court proceedings.)

When a trial court is aware that a defendant would like to have certain family members present, exclusion of those individuals must be demonstrably necessary to protect the interest advanced by the People in support of closure (*People v Nieves*, 90 NY2d 426; *cf., People v Pearson*, 82 NY2d 436). Furthermore, where an undercover officer expresses no trepidation with regard to particular family members, and the record contains no other valid ground for their exclusion, depriving a defendant of their presence violates his constitutional right to a public trial (*People v Nieves, supra; People v Gutierez*, 86 NY2d 817). Under the circumstances, the restrictive nature of the *Hinton* ruling effectively foreclosed the possibility of a reasonable alternative to complete closure of the courtroom (*see, People v Ramos, supra*, 90 NY2d, at 500-506), thus depriving defendant of his right to a public trial.