**09-4723-pr**
**Downs v. Lape**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: May 6, 2011                                    Decided: September 14, 2011)

Docket No. 09-4723-pr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

EVERETT DOWNS,

                    Petitioner-Appellant,

                         v.

SUPERINTENDENT WILLIAM LAPE,

                    Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: WESLEY, CHIN, and LOHIER, <u>Circuit Judges</u>,

        Petitioner appeals from an order of the United States District Court for the Eastern District of New York (Dearie, <u>J.</u>) denying his petition for a writ of habeas corpus. Petitioner argues that his Sixth Amendment right to a public trial was violated due to a New York state trial judge's failure to make specific findings justifying the exclusion of petitioner's twelve-year-old brother from the courtroom during trial. Because the New York appellate court's finding that this claim was not preserved for appellate review is an independent and adequate state ground for decision, which bars review of the claim by federal courts, we AFFIRM.

        Judge Chin dissents by separate opinion.

DONNA R. NEWMAN, Buttermore Newman Delanney & Foltz, LLP, New York, NY, for Petitioner-Appellant.

ASHLYN DANNELLY (Barbara D. Underwood, Roseann B. MacKechnie, and Paul B. Lyons, on the brief), Eric T. Schneiderman, Attorney General of the State of New York, for Respondent-Appellee.

Lohier, Circuit Judge:

Everett Downs appeals the District Court's denial of his petition for habeas corpus brought under 28 U.S.C. § 2254, which claimed a violation of his Sixth Amendment right to a public trial. The claim rests on the New York state trial judge's failure to make specific findings justifying the removal of Downs's relative from the courtroom during trial. The appeal requires us to consider whether New York's intermediate appellate court exorbitantly misapplied New York law when it held that Downs failed to preserve this claim for state appellate review.

**BACKGROUND**

1. Facts and State Court Proceedings

Downs was arrested and indicted for robbing an auto body shop in 2003. His jury trial in New York State Supreme Court lasted six days. This appeal focuses solely on what happened at the start of the second day of Downs's trial when immediately after jury selection, but just before opening statements, the government and Downs's counsel attended an off-the-record court conference. Although we have no transcript of what occurred during the conference, no one disputes that the trial judge excluded Downs's twelve-year-old brother, Nathaniel Clarke, from the courtroom. The lack of a transcript prevents us from knowing if the trial court justified the exclusion or considered alternatives. Our only record evidence of what transpired comes from

2

the following statement by Downs's counsel in open court after the off-the-record conference:

> I do want to note for the record that there was a young man who, a family member of the defendant who had been asked by the Court to leave because of his age. He is 12 years old and the Court is indicating that it sets a limit of approximately 16 or 17 years of age.
>
> I informed the family of that and I'm sure they will comply. However, I do want to note, for the record, that I believe the young man is a suitable age and that he would not have been an obstruction to the proceedings.
>
> But be that as it may, I have also spoken to the assistant district attorney earlier to apprise her of the following list of things that I believe that I am entitled to and have not yet received . . . .

Counsel made no other statement about Downs's brother or his exclusion; he failed specifically to ask that the judge give reasons for the exclusion or to solicit comment from the judge or the prosecutor, neither of whom interrupted or responded to counsel's statement.

After trial, Downs was convicted of robbery, burglary, and criminal mischief, and sentenced principally to eight years' imprisonment. He appealed to the Appellate Division of the Supreme Court of New York, arguing that his Sixth Amendment right to a public trial was violated because the trial judge closed the courtroom to Clarke without making findings to support the exclusion as required by Waller v. Georgia, 467 U.S. 39 (1984).

The Appellate Division never reached the merits of Downs's Sixth Amendment claim, however, because it found that "[t]he defendant's claim that he was denied the right to a public trial by the court's request that a 12-year old boy be removed from the courtroom is unpreserved for appellate review." People v. Downs, 825 N.Y.S.2d 103, 103 (App. Div. 2d Dep't 2006). Downs's application for leave to appeal to the New York Court of Appeals was denied. People v. Downs, 832 N.Y.S.2d 492 (Table) (2007).

### 2. Federal Habeas Corpus Proceedings

Downs then filed his habeas corpus petition in the District Court, reasserting the arguments set forth above. The District Court (Dearie, J.) denied the petition on the ground that the sparse trial record justified the Appellate Division's conclusion that Downs's claim was not preserved, since defense counsel's statement provided no "meaningful opportunity for the [trial] court to take corrective action." Downs v. Lape, No. 08-CV-0092, 2009 WL 3698134, at *4 (E.D.N.Y. Oct. 30, 2009). The District Court found that "[a]lthough counsel spoke in time for the trial court to change its ruling," his remarks did not "occasion[], as they should have, a meaningful opportunity for the [trial] court to take corrective action." Id. (emphasis in original). Because the issue was sufficiently close, however, the District Court granted Downs a certificate of appealability. See 28 U.S.C. § 2253(c)(2) (certificate granted upon "a substantial showing of the denial of a constitutional right").

This appeal followed.

## DISCUSSION

We review the District Court's denial of Downs's petition for a writ of habeas corpus de novo. See Gibbons v. Savage, 555 F.3d 112, 115 (2d Cir. 2009). In rejecting Downs's petition, the District Court declined to address the merits of his Sixth Amendment claim. We recently explained that, on the merits, four criteria need to be satisfied under Waller to "overcome [the] presumption" of openness created by the Sixth Amendment's public trial guarantee and to "justify closure of a courtroom during a criminal proceeding: (1) 'the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced'; (2) 'the closure must be no broader than necessary to protect that interest'; (3) 'the trial court must consider

4

reasonable alternatives to closing the [proceeding]'; and (4) the trial court 'must make findings adequate to support the closure.'" United States v. Gupta, --- F.3d ---, 2011 WL 2418722, at *2 (2d Cir. June 17, 2011) (quoting Waller, 467 U.S. at 48) (alterations in original).

### 1. Federal Review Under § 2254

Our function on habeas review of a state court proceeding is not to reenact the proceeding or peer over the shoulder of the state court judge ruling on questions of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Instead, federal court review of a state's application of its own rules is deferential. We recently reaffirmed that we are to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct. See Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) ("Our task is not to determine whether [the state] ruling was correct, but to determine its adequacy to preclude federal habeas review.") (quoting Cotto v. Herbert, 331 F.3d 217, 247 (2d Cir. 2003)). We therefore "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"[1] Cone v. Bell, 129 S. Ct. 1769, 1780 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).

The Appellate Division's finding that Downs failed to preserve his Sixth Amendment claim for appellate review constitutes a state ground that is indisputably independent of the public trial right itself. We therefore consider only whether that finding is an adequate ground

---

[1] There is at least one exception to the general rule: An independent and adequate state ground for rejecting a federal claim does not bar federal court review of the claim if the petitioner demonstrates "cause and actual prejudice" for failing to comply with the state rule. See Engle v. Isaac, 456 U.S. 107, 129 (1982); Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Downs does not raise this argument.

5

for decision. If the state ground for decision is adequate, "'[a] federal habeas court will not review a claim rejected by [the] state court.'" Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (quoting Beard v. Kindler, 130 S.Ct. 612, 614 (2009)). Conversely, if the state ground for decision is inadequate, it "should not operate to bar federal review." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999).

We generally assess the adequacy of a state ground of decision by examining whether the rule upon which the state court relied is "'firmly established and regularly followed,'" Walker, 131 S. Ct. at 1127 (quoting Kindler, 130 S. Ct. at 617), keeping in mind that, in "exceptional cases," the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee v. Kemna, 534 U.S. 362, 376 (2002); see Cotto, 331 F.3d at 239 (quoting Lee, 534 U.S. at 376, 381). To determine whether this case involves an exorbitant misapplication of a state rule, we look to see if the state's application serves a legitimate state interest.[2]

2. New York's Contemporaneous Objection Rule

With these principles in mind, we turn to New York's contemporaneous objection rule, which the Appellate Division determined barred appellate review of Downs's Sixth Amendment claim. The full rule, codified at Section 470.05 of New York's Criminal Procedure Law, provides as follows:

---

[2] In doing so, we distinguish a state rule that is exorbitantly applied from one that state courts have applied using their discretion. Standing alone, the latter does not render the rule inadequate. "To the contrary, a discretionary rule can be firmly established and regularly followed – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Kindler, 130 S. Ct. at 618 (internal quotation marks omitted); accord Walker, 131 S. Ct. at 1128.

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. L. § 470.05(2) (McKinney 2009). In effect, an objection is preserved if the objecting party (1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court "expressly decided the question raised on appeal"; or (3) "without success . . . either expressly or impliedly sought or requested a particular ruling." Id. The relevant part of the contemporaneous objection rule for our purposes provides that, with a few exceptions not applicable here, New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings. As we recently explained in Whitley, the rule

has been interpreted by New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." A "general objection is not sufficient," because, as "New York's highest courts uniformly instruct," to preserve a claim, a defendant must "specifically focus on the alleged error."

Whitley, 642 F.3d at 286 (emphasis added) (citations omitted).

7

Downs argues that New York courts do not regularly rely on the contemporaneous objection rule and that the state's application of the contemporaneous objection rule here is an inadequate ground for rejecting his public trial claim. See Garcia, 188 F.3d at 77 (a pre-Lee case, reviewing adequacy by reference to whether the state invokes a procedural rule that it does "'not apply evenhandedly to all similar claims'") (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)). We disagree. As an initial matter, we doubt New York courts have exhibited the tendency that Downs attributes to them. As Downs acknowledges, "there is no mention of an objection being raised by defense counsel" in the cases he cites. See People v. Gomez, 685 N.Y.S.2d 448, 449 (App. Div. 2d Dep't 1998); People v. James, 645 N.Y.S.2d 300, 301 (App. Div. 1st Dep't 1996); People v. Miller, 639 N.Y.S.2d 50, 51 (App. Div. 2d Dep't 1996); People v. Cole, 615 N.Y.S.2d 393, 394 (App. Div. 1st Dep't 1994). Moreover, we expect some variation is inevitable in the application of any procedural rule. Such variation just as easily reflects at least the proper exercise of appellate court discretion as it does the lack of a firmly established and regularly followed rule. In turn, the exercise of discretion by New York courts hardly proves that they fail to regularly follow the state's contemporaneous objection rule, any more than the occasional excusal of a waiver or forfeiture by this Court proves that we do not generally require that arguments advanced on appeal be raised in the lower court. See Walker, 131 S. Ct. at 1130 ("A discretionary rule ought not be disregarded automatically upon a showing of seeming inconsistencies. Discretion enables a court to home in on case-specific considerations and to avoid the harsh results that sometimes attend consistent application of an unyielding rule." (citations omitted)). Here, the Appellate Division exercised limited discretion in finding Downs's public trial claim unpreserved for appeal.

The contemporaneous objection rule authorizes New York state courts of appeal to determine whether the rule's curative purpose is satisfied and enables them to recognize counsel's statement as an objection, or not, consistent with the rule's purpose. See People v. Gray, 652 N.E.2d 919, 922 (N.Y. 1995) (citing People v. Narayan, 429 N.E.2d 123, 126 (N.Y. 1981)). Employing that flexible approach, state courts find that issues are preserved for appellate review in some cases but not in others. Compare People v. Martinez, 568 N.Y.S.2d 940, 941 (App. Div. 1st Dep't 1991) (holding that counsel's sarcastic question, "[W]ould you declare a mistrial if I had an objection?" after the judge's exclusion of the defendant's family, "while not in proper form, . . . sufficiently preserved the issue for appeal"), and People v. Richardson, 744 N.Y.S.2d 407, 407 (App. Div. 1st Dep't 2002) (finding that the defendant's objection to exclusion of family members without "specific reference to the right to a public trial" sufficiently preserved the issue for appeal), with People v. Doster, 786 N.Y.S.2d 166, 167 (App. Div. 1st Dep't 2004) (rejecting argument that the trial judge's failure to make specific findings required a new trial because an objection when the trial court "employed a narrowly tailored closure of the courtroom . . . . would have permitted the court to rectify the situation instantly by making express findings."). Regardless of the resulting variation, the critical factor under this approach is whether the timing or manner of the objection sufficed to prompt the trial judge to address the specific error pressed on appeal. See Whitley, 642 F.3d at 286.

Accordingly, we have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule. E.g., Whitley, 642 F.3d at 286-87; Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007); Garvey v. Duncan, 485 F.3d 709, 718 (2d Cir. 2007); Taylor v. Harris, 640 F.2d 1, 2 (2d Cir. 1981) (per curiam). In a somewhat

9

different context, we have also held, prior to Lee, that the contemporaneous objection rule constitutes an independent and adequate state law ground for disposing of a claim that the defendant's Sixth Amendment right to a public trial has been violated. Garcia, 188 F.3d at 82.

Having determined that the rule constituted an independent ground for disposing of Downs's claim, and that the rule is firmly established and regularly followed in these circumstances, we review the only remaining basis for Downs to be entitled to habeas corpus relief: the Appellate Division's application of the rule in this case must fall within Lee's "limited category" of "exorbitant" misapplications of state law that serve no legitimate state interest. For the reasons that follow, we conclude it does not.

3. Adequacy of the Appellate Division's Finding

The record pertaining to the state trial judge's request that Clarke leave the courtroom is, to say the least, poorly developed. To begin with, there is no clear contemporaneous record that the trial judge in fact ordered Clarke's exclusion from the courtroom. After Downs was convicted and sentenced, Downs's counsel and his mother submitted affidavits to the Appellate Division alleging that the trial judge ordered Clarke to leave the courtroom because of his age.

Even assuming, as we do, that Clarke was excluded by order of the trial court, the record is ambiguous as to whether Downs raised an objection, acquiesced in the exclusion, or merely took issue with the judge's prediction that Clarke would disturb the proceedings. His counsel "note[d] for the record that there was a young man who . . . had been asked by the Court to leave because of his age," and "note[d], for the record, that . . . the young man is a suitable age and that he would not have been an obstruction to the proceedings." But counsel also explained he had "informed the family of that and [was] sure they [would] comply," then turned immediately to

10

other matters.  By making the comment, counsel arguably acquiesced in the order excluding Clarke, and thereby necessarily failed to register the "protest" required by Section 470.05(2).  It is equally unclear whether counsel's statement was directed to the court's failure to make the findings required by Waller or instead reflected a factual disagreement with the judge's off-the-record prediction that Clarke would disturb the trial.  If, as we believe, the latter seems more likely since counsel never referred to the judge's lack of findings that might justify the exclusion, then counsel failed to preserve the specific claim Downs advanced on appeal.  See Whitley, 642 F.3d at 286 (to preserve a question of law for appeal, the defendant "must 'specifically focus on the alleged error'" (quoting Garvey, 485 F.3d at 714)).  In any event, counsel failed to solicit comment from the prosecutor or judge during his statement.  Cf. People v. Pollock, 407 N.E.2d 472, 474 (N.Y. 1980) (argument not preserved by vague objection without disputing prosecution's assertion or requesting a hearing).

The dissent relies principally on three decisions to assert that the Appellate Division does not require a specific form of objection in order to find a Sixth Amendment public trial claim preserved for appeal.  In two cases, however, defense counsel used either the term "objection," People v. Martinez, 568 N.Y.S.2d at 941, or the phrase "I object," Brief of Defendant-Appellant, 2002 WL 34359549, at *6, People v. Richardson, 744 N.Y.S.2d at 407 (quoting trial transcript in which counsel states "I object to the court not allowing them to stay in the courtroom").  In the third case, the prosecutor and the trial court immediately understood defense counsel's statement to constitute an objection, and the court observed, "So you have an objection to that."  People v.

11

Spence, 657 N.Y.S.2d 645, 646 (App. Div. 1st Dep't 1997).[3]

Downs argues, and the dissent asserts, that he nevertheless complied with the requirements of Section 470.05(02) by twice employing the phrase "on the record." He claims that the phrase is a shorthand form of implied objection contemplated by the rule. Were we sitting as judges of the Appellate Division, we may well have found Downs's claim preserved. But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. Without a clear indication that New York courts have consistently construed statements "for the record" as forms of objection, we are hard pressed to say that the Appellate Division's ruling reflected or imposed an extreme, novel, or unforeseeable requirement "'without fair or substantial support in prior state law.'" Walker, 131 S. Ct. at 1130 (quoting 16B Charles A. Wright, et al., Federal Practice and Procedure § 4026 (2d ed. 1996)); see also Garcia, 188 F.3d at 82 ("[A]s we can discern 'no pretence that the [state] Court adopted its view in order to evade a constitutional issue, and the case has been decided upon grounds that have no relation to any federal question, [we will] accept[] the [state court] decision whether right or wrong.'" (quoting Wolfe v. North Carolina, 364 U.S. 177, 195 (1960)) (alteration in original). Given the ambiguity of counsel's comments and the limited state-court

---

[3] The dissent also cites two other decisions on this point. In People v. Glover, defense counsel specifically made an application requesting that the defendant's mother "and other family members" be allowed into the courtroom, and, the court explicitly denied the application as to the family members other than the defendant's mother. 683 N.Y.S.2d 4, 6 (App. Div. 1st Dep't 1998), rev'd, 697 N.Y.S.2d 551 (N.Y. 1999). The record in People v. Bass is considerably less clear, except that the trial court appears to have been prompted to make its decision to close the courtroom in response to defense counsel's specific request to have a family member remain in the courtroom. 687 N.Y.S.2d 148, 148 (App. Div. 1st Dep't 1999).

record, the Appellate Division had a legitimate basis to conclude that Downs's Sixth Argument claim on appeal was not preserved.

In addition to its basis in the record, the Appellate Division's finding that Downs's public trial claim was not preserved for appeal was grounded in legitimate state interests. In general, New York's contemporaneous objection rule seeks "to ensure that 'parties draw the trial court's attention to any potential error while there is still an opportunity to address it,' and to prevent those who fail to do so from 'sandbagging' the opposing party and the trial court on appeal." Whitley, 642 F.3d at 288 (citations omitted) (quoting Cotto, 331 F.3d at 245, and Garcia, 188 F.3d at 82). If the court acknowledges an objection to a ruling but persists in the ruling, the objection is likely preserved. Under the circumstances, we may regard the Appellate Division's decision not to review Downs's public trial claim as reinforcing New York's interest in motivating parties to prompt judges to justify a courtroom exclusion and, more generally, to create a fully developed trial record. In People v. Martinez, for example, the Appellate Division found a public trial objection preserved for appeal when the trial court specifically responded to defense counsel's sarcastic question, "[W]ould you declare a mistrial if I had an objection?" by saying, "I'm going to do what I'm going to do anyway . . . ." 568 N.Y.S.2d at 941. Here, by contrast, the trial court offered no response at all to counsel's statement about Clarke. We cannot say that the Appellate Division's ruling that Downs failed to preserve his claim, like the state court ruling in Lee, "serve[d] no perceivable state interest" in this case, 534 U.S. at 378 (internal quotation marks omitted), or represented an "unyielding application of the general rule" regarding objections. Cotto, 331 F.3d at 246. Far from representing an "exorbitant" application

13

of New York law, the Appellate Division's ruling reflects important state interests in demanding more of counsel than arguable acquiescence.

Our conclusion by no means forecloses the possibility that, in a different context, a state court's rejection of a federal Sixth Amendment claim may rest on an exorbitant application of a state procedural bar. As an example of such a result, we need look no further than Lee, where the Supreme Court held that the Missouri state court's application of a rule requiring written motions for a continuance to deny the defendant's federal due process claim was exorbitant. 534 U.S. at 366.

This appeal, however, differs from Lee in three important respects.[4] First, in contrast to the state court ruling in Lee, which demanded formally perfect compliance with the state's procedural rule without regard to its underlying objectives, the Appellate Division's ruling here advanced New York's legitimate interest in prompting counsel "to call the court's attention to [the error] and permit [the court] to correct what counsel believes is an erroneous ruling."

---

[4] These differences roughly track the three "guideposts" upon which we relied in Cotto to evaluate "the state interest in a procedural rule against the circumstances of a particular case":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d at 240 (quoting Lee, 534 U.S. at 381-85). Although "the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court," id. at 242, perfect compliance with the contemporaneous rule in this case may well have prompted the trial court to justify its order excluding Clarke from the courtroom, which is all that Waller requires.

14

Narayan, 429 N.E.2d at 126. Without more, we cannot describe the Appellate Division's holding as requiring perfect compliance with the contemporaneous objection rule. Second, while in Lee, "no published Missouri decision demand[ed] unmodified application of the Rules in the urgent situation Lee's case presented," 534 U.S. at 387, New York courts regularly deny claimed violations of the Sixth Amendment public trial right based on insufficient objections.[5] Third, we cannot confidently say, as the Supreme Court did in Lee, that the defendant "substantially complied" with the state's "key [r]ule." Id. at 382. Doing so would ignore the real possibility that Downs acquiesced in the trial judge's order or that his statement addressed the trial court's assumption that Clarke would disturb proceedings rather than its failure to make the Waller findings. Indeed, the dissent acknowledges that "perhaps" counsel acquiesced in the order excluding Clarke, but explains that "it is much more likely, in my view, that defense counsel was

---

[5] There are several examples of both the New York Court of Appeals and the Appellate Division rejecting Sixth Amendment public trial claims because a criminal defendant failed to comply in some way with New York's contemporaneous objection rule. E.g., People v. Pollock, 407 N.E.2d at 474 (right to public trial not violated when defendant "voiced a general objection to the People's request to close the courtroom," but "made no request for a hearing" to examine court's reasons for closure); People v. Hamilton, 844 N.Y.S.2d 797, 798 (App. Div. 4th Dep't 2007) (same; "defendant failed to make an objection"); People v. Witt, 685 N.Y.S.2d 657, 658 (App. Div. 1st Dep't 1999) (same; "[d]efendant entered no specific objection to the court's [closure] ruling and thus did not preserve his current claims of error"); People v. Armond, 672 N.Y.S.2d 726, 726 (App. Div. 1st Dep't 1998) (same; defendant "failed to preserve by specific objection his claim regarding the propriety of closure of the courtroom during the undercover officer's trial testimony"); People v. Vasquez, 666 N.Y.S.2d 181, 182 (App. Div. 1st Dep't 1997) (same; defendant "never objected to closure and expressly declined to be heard at the end of the [closure] hearing"); People v. Stovens, 655 N.Y.S.2d 361, 361 (App. Div. 1st Dep't 1997) (same; defendant "failed to raise any of the arguments he now raises on appeal"); People v. Lugo, 650 N.Y.S.2d 102, 103 (App. Div. 1st Dep't 1996) (same; at closure hearing, "defendant raised none of the arguments he now raises on appeal"); People v. Latta, 636 N.Y.S.2d 4, 5 (App. Div. 1st Dep't 1995) (same; defendant "voiced only a general objection to the closure and [did not challenge] the People's proof . . . that the officer's safety would be jeopardized by testifying in open court").

15

objecting." Even if we agreed with the dissent that its characterization of counsel's statement was "more likely," the existence of a plausible contrary view leads us to conclude that the application of the rule is not exorbitant. Because the finding of non-preservation fell within the boundaries of the normal application of New York's contemporaneous objection rule, and the finding serves legitimate state interests and is reasonable in light of the limited record evidence, it precludes federal review of Downs's Sixth Amendment claim. Unlike the Missouri court's decision in Lee, the Appellate Division's application of New York law in this case fails to rise to the level of exorbitance. See Lee, 534 U.S. at 376, 383 (describing application of Missouri's written application rule as "bizarre" in light of the "extraordinary circumstances" presented by that case).

Finally, relying on the Supreme Court's per curiam decision in Presley v. Georgia, 130 S. Ct. 721 (2010), Downs argues that the contemporaneous objection rule cannot be used to bar review of his Sixth Amendment claim because the trial court was independently required to justify and consider alternatives to the courtroom closure, even without an objection from Downs. Whatever tension exists between a court's independent duty to justify courtroom closure and the contemporaneous objection rule, Presley and its predecessors do not resolve it in Downs's favor. In Presley, the Court held that "trial courts are required to consider alternatives to closure even when [the alternatives] are not offered by the parties," but specifically noted that the trial court in that case erred when it closed the courtroom over the defendant's objection. Id. at 724 (discussing Waller, 467 U.S. at 45, 48; Press-Enter. Co. v. Super. Court of Cal., Riverside Cnty., 464 U.S. 501, 511 (1984)). Similarly, in Waller, the Court held "that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet

16

the tests set out in Press-Enterprise and its predecessors." 467 U.S. at 47 (emphasis added); see also Press-Enter., 464 U.S. at 503 (objection by newspaper to courtroom closure under First Amendment).  As both Presley and Waller involved a trial court's response to a registered objection, neither decision requires courts to justify or consider alternatives to closure when, as the Appellate Division reasonably found here, no objection is made.

## CONCLUSION

The sparse record in this case prevents us from saying definitively that defense counsel properly objected or requested that Clarke remain in court.  Moreover, the Appellate Division's ruling reinforced valid state interests in this case, and it does not fall within the "limited category" of "exceptional cases" contemplated by Lee, 534 U.S. at 376.  We therefore AFFIRM the judgment of the District Court.[6]

---

[6] Because the Appellate Division's ruling bars federal court review of Downs's claim that the exclusion of Clarke violated his right to a public trial, we express no view on the merits of that claim, including whether any violation of the public right was too trivial to justify issuing a writ of habeas corpus.  Cf. Gibbons, 555 F.3d at 121.

CHIN, Circuit Judge:

I respectfully dissent.

On the second day of trial, after jury selection and just before opening statements, the trial court ruled -- off the record -- that petitioner-appellant Everett Downs's twelve-year old brother, Nathaniel, could not remain in the courtroom because of his age. Downs's mother had no choice but to take Nathaniel home. Downs was deprived of his right to have his family present -- his mother for the day and Nathaniel for the entirety of the trial. Nathaniel was deprived of his right to be in the courtroom to support his brother.

Numerous cases have held that the blanket exclusion of family members -- including children -- from the courtroom in criminal cases is unconstitutional.[1] The Appellate Division, Second Department, ruled in this case, however, that Downs's Sixth Amendment claim was "unpreserved" for appellate review because his counsel purportedly failed to make a contemporaneous objection. People v. Downs, 825 N.Y.S.2d 103, 104 (2d Dep't 2006).

---

[1] See, e.g., English v. Artuz, 164 F.3d 105, 108-10 (2d Cir. 1998) (affirming grant of writ for petition of habeas corpus based upon partial courtroom closure excluding defendant's family during witness testimony); Guzman v. Scully, 80 F.3d 772, 775-77 (2d Cir. 1996) (reversing denial of writ where defendant's family and friends excluded during witness testimony); Vidal v. Williams, 31 F.3d 67, 69 (2d Cir. 1994) (reversing denial of writ where courtroom closed to public, including defendant's parents, during witness testimony); United States v. Garland, 364 F.2d 487, 489 (2d Cir. 1966) (holding exclusion of defendant's minor child from trial could be deemed violation of public trial right); People v. Gutierez, 86 N.Y.2d 817, 818 (1995) (reversing Appellate Division and ordering new trial where exclusion of defendant's "close family members was broader than constitutionally tolerable"); People v. Richardson, 296 A.D.2d 334, 334 (1st Dep't 2002) (holding trial court's exclusion of defendant's nondisruptive children, ages eight and nine, violated public trial right); People v. James, 229 A.D.2d 315, 315-16 (1st Dep't 1996) (holding trial court's exclusion of defendant's eight-year old son and friend from courtroom denied defendant his constitutional right to public trial); People v. Miller, 224 A.D.2d 639, 639 (2d Dep't 1996) (holding trial court policy of excluding all children under 12 violated defendant's public trial right). Indeed, an intentional, unjustified abrogation of a defendant's public trial right under the Sixth Amendment is structural error, and thus inherently prejudicial. Arizona v. Fulminante, 499 U.S. 279, 294-95 (1991) (citing Waller v. Georgia, 467 U.S. 39, 49 (1984)).

The majority holds that this ruling was not an "exorbitant application" of New York law, and that therefore Downs is not entitled to habeas relief. I disagree.

As the majority notes, we have only a "sparse record" of what transpired during the off-the-record conference as the discussion was not transcribed. Maj. Op. at 18. But we do know that as soon as the parties returned to open court and resumed the proceedings on the record, defense counsel addressed the court as follows:

> I do want to note for the record that there was a young man who, a family member of the defendant who had been asked by the Court to leave because of his age. He is 12 years old and the Court is indicating that it sets a limit of approximately 16 or 17 years of age.
>
> I informed the family of that and I'm sure they will comply. However, I do want to note, for the record, that I believe the young man is a suitable age and that he would not have been an obstruction to the proceedings.

J.A. 74-75 (Trial Tr. 149:20-150:6).

The trial court did not address counsel's remarks, and it never made any findings on the record. The prosecutor also remained silent. The trial proceeded -- with Nathaniel excluded from the courtroom.

Three principal questions are presented: first, whether defense counsel's words constituted an objection to the trial court's exclusion of Nathaniel from the trial; second, whether the Appellate Division's holding that defense counsel's words did not preserve the claim for appeal was an "exorbitant application" of New York's contemporaneous objection rule; and, third, in light of the "sparse record" available for appellate review, whether, to the extent there is

2

any doubt about what transpired, Downs should bear the consequences of the lack of a clearer record.  I address the three issues in turn.

1.       **Was There An Objection?**

To preserve a claim for review, an objection must be "ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action."  Osborne v. Ohio, 495 U.S. 103, 125 (1990); accord Cotto v. Herbert, 331 F.3d 217, 242 (2d Cir. 2003).  We have interpreted New York's contemporaneous objection rule to require a claim to be "interjected at the fact-finding level in such a manner and at such a time as to fairly apprise the court and the opposing party of the nature and scope of the matter contested."  Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir. 1999) (discussing N.Y. Crim. Proc. Law § 470.05(2)) (internal quotation marks omitted).

Here, in my view, defense counsel's statement was sufficient to put the trial court on notice that Downs was objecting to the exclusion of his brother.

First, defense counsel's choice of words makes clear that he was objecting.  He used the phrase "for the record" not once, but twice -- thereby advising the court and the prosecution unequivocally that he was making an objection.  There is no ambiguity about the words "for the record."  Indeed, a lawyer makes a statement "for the record" precisely so that there will be a record -- for the appeal.  As a trial judge, I certainly understood that a lawyer was objecting when she stood up and said "for the record" before expressing disagreement with my ruling.

Second, counsel "amply and timely" brought his concerns to the attention of the trial court.  Counsel noted that the court had asked "a family member" to leave because of his age

3

and because the court had a policy of excluding children under the age of 16 or 17. He then expressed his belief that "the young man" was of "a suitable age," who would not have been "an obstruction to the proceedings." These words "fairly apprised" the trial court that Downs disagreed with its ruling and was objecting to the court's application of a blanket policy of excluding children without giving individualized consideration to whether the particular child -- Nathaniel -- would actually be disruptive. The words were also timely, as defense counsel spoke as soon as the proceedings resumed on the record; the trial court could have taken appropriate corrective action then and there.

Third, the "sequence of events" sufficiently alerted the court and the prosecution that defense counsel was objecting. See Lee v. Kemna, 534 U.S. 362, 377 (2002) (holding "sequence of events" made clear that defense counsel was objecting (quoting Osborne, 495 U.S. at 124)). The trial court issued its ruling off the record, and defense counsel put his statement on the record as soon as the proceedings resumed on the record. This is what an attorney does to preserve an issue for appellate review.

The majority writes that with these words defense counsel was "arguably acquiesc[ing]" in the order excluding Nathaniel. Maj. Op. at 11. Perhaps. But it is much more likely, in my view, that defense counsel was objecting. If he were merely acquiescing, there would have been no reason for him to say anything at all, and he certainly would not have expressed disagreement "for the record." As for counsel's comment to the court that he had "informed the family" and he was "sure they [would] comply," clearly counsel was saying that while the family did not agree with the court's order, it would nonetheless comply. This was not

4

at all inconsistent with the intent to preserve the objection.  Indeed, as defense counsel's affidavit to the Appellate Division makes clear, his intent was to object.[2]

In short, I would hold that Downs objected to the exclusion of his brother from the trial.

**2.      Is the Appellate Division's Ruling**
**An "Exorbitant Application" of New York Law?**

I acknowledge that "[o]ur task is not to determine whether . . . [the Appellate Division's] ruling was correct, but to determine its adequacy to preclude federal habeas review." Cotto, 331 F.3d at 247.  On habeas review, we do not reach questions of federal law "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 129 S. Ct. 1769, 1780 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  In general, a state ground for a decision is adequate where it is based on a state rule that is "firmly established and regularly followed." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (internal quotation marks omitted).  In "exceptional cases," however, the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee, 534 U.S. at 376.

I agree that, in general, New York's contemporaneous objection rule is "firmly established and regularly followed." See Whitley v. Ercole, 642 F.3d 278, 286-87 (2d Cir. 2011); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007).  Hence, the question is whether this application of a "generally sound rule" was "exorbitant."  I believe it was.

---

[2]      Counsel's affidavit states:  "As the trial transcript reflects, I objected to the Court's order to remove Nathaniel Clarke from the Courtroom during the trial . . . ."  J.A. 63 (Aff. of John Scarpa, sworn to 7/25/05, ¶ 3).

5

The determination of adequacy rests upon "the statute and caselaw." <u>Cotto</u>, 331 F.3d at 243. Accordingly, I consider first the plain language of New York's contemporaneous objection rule and second the caselaw applying it.

### a. The Plain Language of § 470.05(2)

New York Criminal Procedure Law § 470.05(2) provides that:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. Law § 470.05(2) (McKinney 2009). Thus, an objecting party preserves an objection if he: (1) made his position regarding the ruling known to the court; (2) made a "protest" and the trial court "expressly decided the question raised on appeal"; or (3) "without success has either expressly or impliedly sought or requested a particular ruling." <u>Id.</u> The rule does not require more of a party than "impliedly" requesting a particular ruling, nor, indeed, does it require an "actual protest." <u>Id.</u> <u>See</u> <u>Cotto</u>, 331 F.3d at 247 (applying "substantial compliance" analysis).

6

Here, Downs's counsel's statement fell within at least the first and third alternatives. He stated his "position" almost immediately, as soon as the proceedings resumed on the record following the trial court's off-the-record exclusion order. He certainly "impliedly" -- if not "expressly" -- sought a particular ruling by suggesting that the trial court permit Nathaniel to remain. As this occurred prior to opening statements and counsel stated that he had just then notified the family, the trial court still had the "opportunity of effectively changing" its ruling. See N.Y. Crim. Proc. Law § 470.05(2). Accordingly, even on this limited record, it is apparent that Downs's counsel complied with the plain language of § 470.05(2).

### b. The Caselaw Interpreting § 470.05(2)

The caselaw supports the conclusion that the Appellate Division's ruling that Downs's claim was "unpreserved" is an "exorbitant application" of New York's contemporaneous objection rule.

The phrase "exorbitant application" was first used in this context by the Supreme Court in Lee v. Kemna, 534 U.S. at 376. An "exorbitant" application of a state rule is one that is outside the intended scope of the law or is otherwise excessive, see 5 Oxford English Dictionary 549 (2d ed. 1989); or is "persnickety," i.e., overly fussy or particular or formalistic, see Walker, 131 S. Ct. at 1128 n.4 ("This Court held inadequate to bar federal review a state court's persnickety application of a rule . . . ."); or is an "arid 'ritual . . . [that] would further no perceivable state interest,'" Richardson, 497 F.3d at 218 (quoting Lee, 534 U.S. at 375)).

To determine whether a particular application of a state rule is "exorbitant," we look to three "guideposts," as we explained in Cotto:

7

> (1) whether the alleged procedural violation was actually relied on
> in the trial court, and whether perfect compliance with the state
> rule would have changed the trial court's decision; (2) whether state
> caselaw indicated that compliance with the rule was demanded in
> the specific circumstances presented; and (3) whether petitioner
> had "substantially complied" with the rule given "the realities of
> trial," and, therefore, whether demanding perfect compliance with
> the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d at 239-40 (quoting Lee, 534 U.S. at 381-85).

In my view, under all three guideposts, the Appellate Division's application of the contemporaneous rule was exorbitant. First, the trial court did not rely on any failure on the part of Downs's counsel to object, and perfect compliance by counsel with § 470.05(2) would not have changed the trial court's decision. The trial court had a blanket policy of excluding children, and it invoked its policy here on its own initiative. When Downs's counsel raised the issue, his remarks elicited no response from the court whatsoever. Second, while state caselaw does demand compliance with the contemporaneous objection rule in general, as discussed below, there certainly is some latitude in the form the objection must take, particularly in the context of courtroom exclusions. Third, Downs's counsel "substantially complied" with the rule, particularly in light of "the realities of trial." As soon as the proceedings resumed on the record, defense counsel put the trial court's order on the record and expressed his disagreement. Counsel made his disagreement known to the court, "for the record," without being disrespectful. Given the "realities" that the trial court had a blanket policy and excluded Nathaniel on its own initiative, Downs's counsel took sufficient action.

The question arises, of course, as to what more defense counsel could have done. I suppose counsel could have added the words "I object" or "I ask the court to reconsider," or he

8

could have referred specifically to the Sixth Amendment. These words, however, would have made no difference, as counsel had already made the point with his "for the record" statements. "[T]here is no reason to believe that the trial court would have changed its mind." Cotto, 331 F.3d at 242-43. Further objection would have been only ritualistic and would not have furthered any legitimate state interest, as the purposes of the contemporaneous objection rule were fully met by what counsel had already said.

The cases applying § 470.05(2) show that the courts are flexible as to the form of an objection. The key is whether counsel's actions or words advance the state interest underlying the rule: to ensure that parties draw the trial court's attention to potential error while there is still an opportunity to address it. Cotto, 331 F.3d at 245. If counsel's statement or actions serve that function, the claim is deemed preserved.

In People v. Martinez, for example, a sarcastic question from defense counsel, "while not in proper form," was deemed sufficient to preserve for appeal the issue of excluding defendant's family members from the courtroom. 172 A.D.2d 428, 429 (1st Dep't 1991). In People v. Richardson, defense counsel's objection at trial to the exclusion of defendant's non-disruptive children, without specific reference to the right to a public trial, was also held to be sufficient. 296 A.D.2d 334, 334 (1st Dep't 2002); see also People v. Spence, 239 A.D.2d 218, 219 (1st Dep't 1997) (holding that despite defense counsel's failure to specifically state his objection on Sixth Amendment grounds, "objection" in form of comment that defendant's wife was entitled to sit for whole trial was sufficient to preserve issue).

Even an attorney's identification of a family member present in the courtroom who desired to remain, prior to the court's exclusion order, has been held sufficient to place a court on

9

"express notice" of a public trial claim and preserve it for review. People v. Bass, 259 A.D.2d 419, 420 (1st Dep't 1999). In People v. Glover, while the First Department ruled that an objection to an exclusion order was unpreserved because the defendant failed to "specifically identify" his brother and sister, 256 A.D.2d 36, 36 (1st Dep't 1998), the Court of Appeals reversed, ordering a new trial on the grounds that the brother and sister had been improperly excluded from the courtroom, 93 N.Y.2d 1010 (1999).[3]

Here, Downs's counsel did more than defendant's counsel did in Martinez, where counsel merely asked a sarcastic question in response to the trial court's closure order, conduct that the First Department held to be sufficient to preserve the issue for review. 172 A.D.2d at 429. Downs's counsel specifically identified Nathaniel as a "family member," and represented that Nathaniel would not be a disruption to the proceedings. Counsel left no doubt that he was drawing attention to a possible Sixth Amendment violation.

For all these reasons, I believe that this case falls within the "small category of cases" in which the state ground is inadequate to preclude our review of the constitutional claim. Lee, 534 U.S. at 381. It was an "exorbitant application" for the Appellate Division to hold that counsel's words of protest did not constitute an objection.

---

[3]    Cf. Cotto, 331 F.3d at 241-47 (holding that New York Court of Appeals's ruling that defendant's objection to bar on cross-examination was unpreserved was "inadequate," even though defense counsel did not specifically object to trial court's ruling, where counsel had earlier stated: "to not allow me to cross-examine Mr. Echevarria on any or all of his background . . . is really totally completely unfair"); Garcia v. Lewis, 188 F.3d 71, 74, 80 (2d Cir. 1999) (holding objection was not preserved where defense counsel merely asked for "clarification" as to whether trial court's order excluding all but defendant's "close relatives" from the courtroom extended to his mother's "companion"); People v. Nieves, 90 N.Y.2d 426, 432 n.* (1997) (holding objection preserved given that after defendant objected to the People's application to close the courtroom, trial court "expressly considered" whether defendant's children could remain and specifically ruled upon that possibility).

10

### 3. Who Bore the Burden of Making A Clearer Record?

The district court held that Downs's Sixth Amendment claim was unreviewable because of the insufficiency of the record. The district court squarely placed the burden of making a record on Downs, as it held that petitioner "[bore] the responsibility for generating a record that makes meaningful post-conviction review feasible." Downs v. Lape, No. 08 Civ. 92 (RJD), 2009 WL 3698134, at \*4 (E.D.N.Y. Oct. 30, 2009).

The majority acquiesces in this conclusion. It notes that "[t]he record pertaining to the state trial judge's request that [the brother] leave the courtroom is, to say the least, poorly developed." Maj. Op. at 11. It observes that defense counsel "failed specifically to ask that the judge give reasons for the exclusion or to solicit comment from the judge or the prosecutor, neither of whom interrupted or responded to counsel's statement." Maj. Op. at 3. The majority seems to agree with the district court that it was up to Downs and his counsel to create a record that was free from all ambiguity, and that Downs must now bear the consequences of the lack of a pristine record. In my view, if there is any doubt -- and I believe there is very little -- any ambiguity should be resolved in favor of Downs.

First, as a general matter, § 295 of the New York Judiciary Law requires "complete stenographic notes of <u>each ruling or decision</u> of the presiding judge." N.Y. Jud. Law § 295 (McKinney 2005) (emphasis added).[4] <u>See also</u> ABA Standards for Criminal Justice,

---

[4] Section 295 provides: "Each stenographer . . . shall take complete stenographic notes of each ruling or decision of the presiding judge, and when the trial is by jury each and every remark or comment of such judge during the trial, when requested so to do by either party, together with each and every exception taken to any such ruling, decision, remark or comment by or on behalf of any party to the action." N.Y. Jud. Law § 295 (McKinney 2005). As the language suggests, while a party must request the transcription of a "remark or comment" of the presiding judge, no such request is necessary to trigger the obligation to transcribe a "ruling or

11

Standard 6-1.7 (3d ed. 2000) ("The trial judge has a duty to see that the reporter makes a true, complete, and accurate record of all proceedings."). The trial court's ruling excluding Nathaniel from the trial should have been transcribed. While a defendant must show that he has been prejudiced by the absence of a stenographic record to obtain reversal of a conviction, see People v. Harrison, 85 N.Y.2d at 796,[5] Downs surely would be prejudiced if he is deemed to have forfeited his right to post-conviction review because of the absence of a more complete record.

Second, in the Sixth Amendment context in particular, the trial court itself has an obligation to make a proper record. In Waller v. Georgia, the Supreme Court held that a trial court may not close a court proceeding unless it concludes, based on specific findings, that closure is justified by an "overriding interest," the closure is no broader than necessary, and reasonable alternatives to closure have been considered. 467 U.S. 39, 45, 48 (1984) (internal citations omitted). A trial may not be closed unless the trial court makes "findings" specific enough to permit a reviewing court to determine whether the closure order was properly entered. Id. at 45.

Likewise, the New York Court of Appeals has held that, pursuant to the Sixth Amendment, a trial court's reasons for excluding a defendant's family members from the courtroom "must be 'demonstrated and documented.'" Nieves, 90 N.Y.2d at 429-30 (quoting People v. Kin Kan, 78 N.Y.2d 54, 57 (1991)). So too, in Martinez, the First Department noted

_____

decision" of the judge. See People v. Harrison, 85 N.Y.2d 794, 796 (1995) (distinguishing between full and mandatory recordation of each judge's "ruling or decision" and party-initiated recordation of judicial "remarks and comments," pursuant to N.Y. Jud. Law § 295); 28 N.Y. Jur. 2d Courts and Judges § 500 (2010) (same).

[5]     A defendant is not prejudiced if the record can be reconstructed. Harrison, 85 N.Y.2d at 796.

that the record was silent as to any factual findings or overriding interest to justify the closure, and determined that the burden was on the trial court to create a record when such an important right was being foreclosed. 172 A.D.2d at 429-30.

Here, although the record is "sparse," what exists makes clear that the exclusion order rested upon the trial court's policy of not permitting members of the public under "16 or 17 years of age" to attend trial. Defense counsel's statement that Nathaniel "would not have been an obstruction to the proceedings" and the observation in his affidavit to the Appellate Division that the court ordered Nathaniel out of the courtroom "solely because of his age," J.A. 63, make clear that the court's policy was a blanket one and that Nathaniel was not given individual consideration. Moreover, the available record shows that the trial court ordered Nathaniel excluded on its own initiative; the prosecution had not requested that Nathaniel be removed. Downs's counsel challenged the exclusion order by making his statement "for the record." Yet, the trial court remained silent -- it did not correct anything that counsel said, nor did it make the individualized findings required by Waller. Likewise, the prosecution did nothing, when it should have reminded the trial court of its duty to make findings sufficient to justify exclusion of Nathaniel.

In these circumstances, it was the trial court's burden to make findings sufficient to justify its self-initiated closure of the courtroom to Nathaniel.[6] Yet, it made no findings at all.

---

[6]      Because a "presumption of openness" arises under the Sixth Amendment, Waller, 467 U.S. at 45; Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cnty., 464 U.S. 501, 510 (1984), where a court closes a courtroom on its own initiative, it follows that the court is obliged to articulate an interest sufficient to override the presumption and to make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." Press-Enter. Co., 464 U.S. at 510.

As the district court noted below, "[t]his record . . . would almost automatically fail <u>Waller</u>, for no overriding interest has been identified, the court's consideration of alternatives is not evident on the record, and of course <u>there are no findings</u>." <u>Downs</u>, 2009 WL 3698134, at *4 (emphasis added).

In light of all the circumstances, to the extent there is any ambiguity in the record, that ambiguity should not operate to deprive Downs of his right to habeas review.

## CONCLUSION

Downs has suffered the loss of an important constitutional right solely on the grounds the claim was "unpreserved." Such an important right should not be deemed forfeited, however, merely because the magic words "I object" were not woven into what was already clearly an objection. The Appellate Division's conclusion to the contrary was indeed a "persnickety" elevation of form over substance. Accordingly, I would reverse the judgment of the district court denying the petition for a writ of habeas corpus.