24-2602-pr
*Caballero v. Miller*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty-five.

PRESENT:
> GERARD E. LYNCH,
> BETH ROBINSON,
> ALISON J. NATHAN,
> *Circuit Judges.*

———————————————————————

ANDREW CABALLERO,

> *Petitioner-Appellee,*

> v.                                        No. 24-2602-pr

CHRISTOPHER MILLER, WARDEN/SUPERINTENDENT OF THE COMSTOCK CORRECTIONAL FACILITY,

> *Respondent-Appellant.*\*

———————————————————

---

\* The Clerk's office is respectfully directed to amend the caption as reflected above.

_____

FOR PETITIONER-APPELLEE:        SARAH KUNSTLER, Law Office of Sarah Kunstler, Brooklyn, NY.

FOR RESPONDENT-APPELLANT:        DANIELLE M. O'BOYLE, Assistant District Attorney (John M. Castellano, Assistant District Attorney, *on the brief*), *for* Melinda Katz, District Attorney for Queens County, Kew Gardens, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Korman, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on September 20, 2024, is **REVERSED**.

The State of New York appeals from the district court's judgment granting Petitioner-Appellee Andrew Caballero's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. In granting Caballero's petition, the district court concluded that Caballero received ineffective assistance of trial and appellate counsel and that the state court unreasonably applied clearly established federal law in concluding otherwise. We disagree and **REVERSE**. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## I.  BACKGROUND

On February 1, 1995, Jason Kollman was stabbed fifteen times, was pushed off the rooftop of a building in New York City, and landed on a fifth-floor fire escape, where he bled to death. The crime remained unsolved until 2012, when a New York grand jury indicted Caballero after two witnesses, Oscar Balarezo, a friend of Caballero, and Nadia Sierra, Caballero's girlfriend at the time of the murder, identified Caballero as the killer. In September 2012, Caballero retained Attorney Robert DiDio to represent him.

In late May and early June 2014, several weeks before trial, the prosecution disclosed *Rosario*[1] material, including police interview reports from multiple witnesses. Those witnesses included Michael Lugo, Amanda Pabon, Angel Hernandez, Javier Peralta, Kim Pietrovito, and Wayne Dewall.

In the interview reports, several of the witnesses described observing or hearing about a fight between Kollman and Lugo shortly before Kollman's death. Specifically, Kollman's close friend Peralta reportedly told police that he witnessed a "fist fight" between Kollman and Lugo that evening. App'x at 2253.

---

[1] In *People v. Rosario*, 9 N.Y.2d 286 (1961), the New York Court of Appeals held that the prior statement of a witness should be made available to the defense for possible use on cross-examination.

Lugo's girlfriend Pietrovito reported that Lugo told her on the night of the murder that he had gotten into a fight with Kollman earlier in the evening. *Id.* at 2255. And when Lugo himself spoke to police, he admitted on two separate occasions that he and Kollman had gotten into a fight—though he originally told police the fight was over a girl, *id.* at 2240, and only years later admitted that it involved a dispute over money related to a drug transaction, *id.* at 2243.

Some of the witnesses also indicated that they thought or had heard from others that Lugo, not Caballero, was the murderer. For example, in October 1999, Hernandez, a friend of Lugo, reportedly told police that "everybody knows" Lugo killed Kollman, and that he had heard that information from "Amanda," Kollman's former girlfriend. *Id.* at 2237. Amanda Pabon, Kollman's ex-girlfriend, told police in November 2011 that she "believe[d] that Mr. Lugo may have had something to do with [Kollman's] death" based on a tense interaction she had witnessed between the two on the evening of the murder. *Id.* at 2252. Peralta reportedly told police that "Chris," a neighbor of Caballero, had seen Kollman, Lugo, and someone named "Anthony" enter Caballero's apartment building that night, and, based on that information, he believed "that Anthony or Lugo, or both"

4

was responsible for Kollman's death.[2] *Id.* at 2253–54. (Peralta himself was accused of being the killer by Dewall, a friend of Kollman who reported to detectives in 1995 that Kollman was killed due to a relationship with Pabon, who was Peralta's girlfriend at the time. *Id.* at 2235.)

On July 21, 2014, the day before jury selection was to begin in Caballero's trial, the prosecution disclosed additional materials that included reports of interviews with Nadia Sierra, Oscar Balarezo, Monique Moses, Christian Cavalieri, and Samantha Newmark. The materials regarding Sierra and Balarezo disclosed that they had told police, among other things, that Caballero was Kollman's killer. Moses's report recounted a conversation with a distraught Sierra in which Sierra reported that she had ended her relationship with Caballero, asked Moses to watch her child because Sierra feared for the child's safety, and said she could not believe what Caballero had done. Meanwhile, Newmark's report said that she told police that she had heard from Kollman's friend Chris that Kollman "got into a fight on the street with Mike Lugo" before going into a building with "Andy." *Id.* at 2246. And Cavalieri's report noted his observation that when he

---

[2] Caballero correctly notes in his briefing that his first name is Andrew, not Anthony. However, it is perhaps worth noting that according to a police report documenting Christian Cavalieri's interview, in which Cavalieri is referred to as "Chris," Cavalieri identified Caballero as one of the two men who entered the apartment building with Kollman. App'x at 2232.

5

ran into Kollman that evening, Kollman's "lip and face looked swollen" and he thought Kollman may have had a broken jaw when Kollman went into the apartment building with "two males, both [H]ispanic." *Id.* at 2231.

The next day, after receiving these disclosures, DiDio sought an adjournment so he could contact the witnesses from both the July disclosures and the earlier May and June disclosures to explore avenues for impeaching Balarezo and Sierra. At a hearing on the motion, DiDio explained that, because Balarezo and Sierra had previously refused to speak to a defense investigator, the potential import of the other witnesses' statements about them had become clear only the day before. Specifically, he pointed to (1) Lugo's statement placing Balarezo at the scene of the fight between Lugo and Kollman (which Balarezo claimed only to have heard about second hand); (2) Peralta's report that he had heard that Kollman had gone to the apartment rooftop with Lugo, not Balarezo, as Balarezo claimed; and (3) Moses's description of Sierra's statements, which DiDio argued contradicted Sierra's statements to police that she had told Moses "everything that happened that night," *id.* at 38.

The trial court denied the request, emphasizing that Caballero knew both Balarezo and Sierra and his counsel could have attempted to investigate them—

6

and interview several other witnesses about them—well before receiving their *Rosario* materials. Mindful of Sierra's claims that Caballero had threatened her following the murder and the fact that her name and expected incriminating testimony had now been disclosed, the court ordered the trial to go forward.

DiDio enlisted an associate, Danielle Muscatello, who rushed to investigate the additional witnesses as the trial began. She enlisted an investigator, Edward Dowd, to run background checks on Sierra and Balarezo and locate Lugo, Moses, and Peralta. Although Dowd was able to contact Moses by phone, he did not make contact with Lugo or Peralta or run background checks on Sierra or Balarezo.

At trial, the prosecution presented no forensic or physical evidence tying Caballero to the crime and relied heavily on the testimony of Balarezo and Sierra. DiDio's trial strategy focused primarily on impeaching them by highlighting inconsistencies in their stories. DiDio also elicited testimony about the fight between Kollman and Lugo in the hour before Kollman's death, and in his summation DiDio suggested that the jury should consider the "friction" between Lugo and Kollman when deciding its verdict. App'x at 861-62. He did not otherwise present Lugo as a potential alternative perpetrator at trial.

After deliberating for three days, the jury convicted Caballero, and the trial court sentenced him to an indeterminate prison term of twenty-five years to life. Muscatello, who represented Caballero on direct appeal, did not argue in that appeal that DiDio had provided ineffective assistance of counsel. In 2016, the Appellate Division affirmed Caballero's conviction.

In June 2017, Caballero filed a *pro se* application for a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel for Muscatello's failure to challenge on direct appeal DiDio's effectiveness. Specifically, Caballero argued that Muscatello labored under a conflict of interest that prevented her from bringing a meritorious claim of ineffective assistance. The Appellate Division summarily denied that petition.

In September 2018, Caballero filed a *pro se habeas corpus* petition in the Eastern District of New York. Court-appointed counsel then filed a supplemental brief asserting ineffective assistance of both trial and appellate counsel. In 2021, the district court stayed the petition so that Caballero could litigate the ineffective-assistance-of-trial-counsel claim in state court.

At a hearing in state court under New York Criminal Procedural Law § 440.10, Caballero called Muscatello; Irwin Blye, an investigator who worked

with DiDio shortly after he was retained by Caballero in September 2012; Dowd, the investigator enlisted by Muscatello to investigate potential witnesses on the eve of trial; and Nelson LaSalle, a private investigator retained by Caballero's habeas counsel in February 2023. Because DiDio died before the hearing, the court allowed the state to introduce his written contemporaneous notes.

Notably, LaSalle testified that he had been able to locate and speak to almost all the potential witnesses identified in the *Rosario* material that DiDio received before trial. Over the course of approximately 40 hours of work, he had successfully found and spoken with Christian Cavalieri, Monique Moses, Samantha Newmark, Amanda Pabon, Javier Peralta, Kimberly Pietrovito, and Nadia Sierra. Though he had also located Lugo and Balarezo, he explained that Lugo had not been willing to speak to him and Balarezo had not returned his call. Wayne Dewall, the final witness he attempted to locate, had died.[3]

During the hearing, the § 440.10 court did not allow LaSalle to provide hearsay testimony about the contents of his conversations with the witnesses, and none of the witnesses testified or provided written affidavits in support of

---

[3] LaSalle had not been asked to locate witness Angel Hernandez.

Caballero's case.[4]  As a result, no new information was provided about the witnesses' recollections of the night of the murder or their potential testimony if they had been called at trial.

After the hearing, the Queens County Supreme Court denied Caballero's motion, concluding that Caballero established neither deficient representation by DiDio nor prejudice from any deficiency.  The court found that DiDio's notes indicated that he had conducted some investigation of Caballero's case and noted that Caballero "has failed to indicate what, if any, relevant information [the] individuals [whom DiDio failed to contact] would have been able to provide." App'x at 2347.  The court concluded that Caballero had also failed to show that DiDio's limited investigation compromised the fairness of the litigation.

In 2024, the Eastern District of New York granted Caballero's writ of *habeas corpus* under 28 U.S.C. § 2254.  The court concluded that DiDio provided deficient representation by failing to investigate leads suggesting Lugo as a potential alternative suspect, reasoning that there was no conceivable strategic basis for not investigating this possible defense.  The court concluded that the cumulative effect

---

[4] Caballero's counsel did not make an offer of proof as to what LaSalle would have said had hearsay testimony been permitted.

10

of this failure to investigate, along with certain other trial errors, established prejudice.

## II. STANDARD OF REVIEW

"The grant or denial of habeas corpus is reviewed *de novo*, and the underlying findings of fact are reviewed for clear error." *Clark v. Perez*, 510 F.3d 382, 389 (2d Cir. 2008).[5] Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition "adjudicated on the merits in State court" can be granted only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

For ineffective assistance of counsel claims, "the merits of such claims are squarely governed by the Supreme Court's holding in *Strickland v. Washington*." *Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir. 2001). To establish a claim for ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

[5] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

11

of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

Because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  A state court thus has significant "latitude to reasonably determine that a defendant has not satisfied [the] standard."  *Sexton v. Beaudreaux*, 585 U.S. 961, 968 (2018).  In accordance with that deferential standard of review, the question faced by a federal court considering whether to grant a *habeas* petition "is not whether [it] believes the state court's determination under the *Strickland* standard was *incorrect* but whether that determination was *unreasonable*—a substantially higher threshold."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (emphasis added).

### III.  TRIAL COUNSEL

Caballero's ineffective assistance of trial counsel claim hinged primarily on two errors: (1) DiDio's failure to investigate and attempt to interview Balarezo and Sierra and (2) DiDio's failure to investigate Lugo as an alternative suspect. Caballero also points to DiDio's apparent confusion about the layout of the apartment building where Kollman was killed, which led DiDio to ask some

questions on cross-examination that he eventually had to concede before the jury were based on a mistaken premise.

The State contends that the district court was insufficiently deferential to the state court's ruling on Caballero's ineffective assistance claim. In particular, the State emphasizes that the lack of testimony or affidavits from the witnesses Caballero says DiDio should have interviewed "goes to the heart of the prejudice analysis." Appellant's Br. at 59. Without such evidence, the State argues, Caballero failed to demonstrate what relevant information those witnesses would have provided, or even that they would have been willing to testify at trial. We agree. Even if any reasonable jurist would necessarily conclude that DiDio's failure to investigate these critical leads was objectively unreasonable and constituted deficient performance, we cannot conclude the state court unreasonably applied *Strickland* when it held that Caballero was not prejudiced by any deficiency in DiDio's representation.

Caballero bears the burden of affirmatively proving prejudice and must demonstrate "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. He argues, and the district court agreed, that the relative weakness of the case against

13

him combined with DiDio's failure to conduct a proper investigation necessarily prejudiced him, such that he was not required to proffer evidence about what a proper investigation would have revealed.

But the cases cited for that proposition do not support such a broad-brush assessment. In *Lindstadt*, for example, the prejudice entailed by trial counsel's failure to investigate was clear: the petitioner identified witnesses who were aware of and, had they been investigated and called to testify, could have testified to information that would have deeply undermined the prosecution's key witness. 239 F.3d at 205 ("The probation officers, as outside, impartial observers of the Lindstadt household, could have provided essential corroboration for Lindstadt's testimony that his wife was vindictive; and their testimony would have put the case in the context of her previous attempts to get her husband jailed.").

The same is true of *Schulz v. Marshal*, 345 F. App'x 627 (2d Cir. 2009), on which the district court relied for the proposition that failure to investigate the potential witnesses alone might amount to prejudicial ineffective assistance. There, we noted that trial counsel failed to interview a key eyewitness, who, when questioned by new counsel after the trial, identified a perpetrator other than the defendant. *Schulz*, 345 F. App'x at 629. Given other weaknesses in the state's case,

we determined that the petitioner had shown a reasonable probability that investigating this witness pretrial would have altered the outcome of the case – and the state court had unreasonably applied *Strickland* when it held otherwise. *Id.*

Here, in contrast, Caballero presented no evidence about what information a more thorough investigation would have garnered. Caballero's investigator, LaSalle, contacted and spoke to virtually all the individuals identified in the *Rosario* material. Despite those efforts, nothing in the record of the § 440.10 hearing suggests that any of the witnesses would have provided additional testimony or information that DiDio could have used to more effectively impeach Balarezo or Sierra or to implicate Lugo as an alternative perpetrator if he had interviewed them before trial. None of the witnesses testified (or provided affidavits stating) that they would have provided information helpful to Caballero's defense.

And Caballero has not argued—before the district court or before us—that the sole reason he has failed to present such additional information is the state court's evidentiary ruling prohibiting LaSalle from providing hearsay testimony about his conversations with the witnesses. Nor has Caballero argued that that

ruling itself was constitutionally infirm. Indeed, he has not even proffered what LaSalle would have testified, absent that ruling.

That dearth of evidence is particularly significant given the substantial amount of hearsay, speculation, and information otherwise *unhelpful* to the defense that is apparent in the police reports upon which Caballero's ineffective assistance claims rely. Hernandez, Peralta, and Newmark all told police that they had merely heard information from others—namely "Amanda" and "Chris"—that made them suspect Lugo might have been Kollman's murderer. And the direct witnesses inculpated Caballero more than they inculpated Lugo. Even though Pabon herself saw an interaction between Kollman and Lugo that raised her suspicions, her interview reports also indicate that Caballero was the last person with whom she had seen Kollman alive on the night of the murder, that Caballero had been involved in drug-dealing with Kollman and Lugo, and that she had seen Caballero and Kollman walking into the courtyard of the apartment building that night—but only Caballero and Balarezo walking out approximately 30 minutes later. Likewise, Cavalieri identified Caballero as one of the two Hispanic men whom he saw entering the building with Kollman. Thus, nothing in either the *Rosario* material or the post-trial record gives any reason to believe that any of

those witnesses, had they been interviewed by DiDio and called to testify at the trial, could or would have provided admissible evidence helpful to Caballero's defense.[6]

In short, Caballero has failed to show "a substantial, not just conceivable, likelihood of a different result" had DiDio investigated the individuals Caballero identifies in his habeas petition. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). As a result, the state court did not unreasonably apply *Strickland* when it concluded Caballero was not prejudiced by any of DiDio's asserted deficiencies. We therefore reverse the district court's grant of Caballero's § 2254 petition on that basis.

## IV.   APPELLATE COUNSEL

The district court concluded that the state court unreasonably applied *Strickland* when it concluded Muscatello was not ineffective because DiDio's

---

[6]   Nor does the record suggest that further investigation would have developed additional impeachment evidence about trial witnesses Balarezo and Sierra. Sierra agreed to speak to LaSalle in 2023; yet just like the witnesses from the *Rosario* materials, Caballero has not offered any indication that she provided information that would have been useful to his defense. Balarezo, in turn, declined to return LaSalle's call, just as he had declined to be interviewed by defense counsel and investigators before trial. Both were effectively cross examined by DiDio; indeed, Caballero's and the district court's argument about the putative weaknesses of the case at trial is based entirely on points developed on cross-examination and arguments (such as the absence of physical evidence) presented by DiDio to the trial jury.

17

ineffectiveness was obvious on the face of the record, rendering Muscatello's failure to raise the argument on direct appeal constitutionally deficient. We disagree.

"New York courts uniformly hold that where . . . an ineffective assistance of counsel claim turns on facts that are outside of the trial-court record, the claim *must* be brought in collateral proceedings, not on direct appeal." *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016). A robust evaluation of whether DiDio was ineffective for failing to better investigate this case would require additional evidence beyond the trial record, including the *Rosario* materials, testimony from DiDio about his potential strategy, and testimony about what evidence could have been introduced at trial. Thus, the state court did not unreasonably apply *Strickland* when it concluded Muscatello was not ineffective for failing to raise this issue on direct appeal.

Moreover, even if New York law did not clearly require ineffective assistance claims like Caballero's to be raised in collateral proceedings, rather than on direct appeal, his claim of ineffective assistance of appellate counsel would still fail. Ineffective assistance claims addressing conduct by an appellate attorney are governed by the same *Strickland* performance and prejudice standard as claims

addressing conduct by trial counsel. *See Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015). "To establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." *Id.* But, as noted above, Caballero has failed to demonstrate a reasonable probability that he was prejudiced by DiDio's potential deficiencies. As a result, he has also failed to demonstrate a reasonable probability that Muscatello would have succeeded in showing that same required prejudice on appeal.

* * *

Accordingly, for the reasons stated above, the District Court's judgment is **REVERSED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court